NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1679-14T4

GINAMARIE GOMES,

    Plaintiff-Appellant,

v.

THE COUNTY OF MONMOUTH, a body
politic of the State of New Jersey,
and CORRECT CARE SOLUTIONS, LLC,

    Defendants-Respondents.

```
┌─────────────────────────────┐
│   APPROVED FOR PUBLICATION   │
│                              │
│        April 14, 2016        │
│                              │
│      APPELLATE DIVISION      │
└─────────────────────────────┘
```

Submitted February 22, 2016 — Decided April 14, 2016

Before Judges Sabatino, Accurso and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2096-14.

Law Offices of Herbert I. Ellis, P.C., attorneys for appellant (Mr. Ellis and Amy B. Francesco, on the brief).

Marks, O'Neill, O'Brien, Doherty & Kelly, P.C., attorneys for respondents (Melissa J. Brown and Sean X. Kelly, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This appeal raises in part the novel issue of whether a plaintiff, who was treated by a private medical provider under contract to provide care to inmates at a county jail, must serve

that private entity with a tort claims notice before she can sue the company for negligence.  We hold that the Tort Claims Act (the "TCA" or the "Act"), <u>N.J.S.A.</u> 59:1-1 to :14-4, does not require service of such a notice upon a private government contractor.  Consequently, we reverse the trial court's dismissal of plaintiff's claims against the contractor for failure to serve it with a notice.

In the unpublished portion of this opinion, we affirm the trial court's dismissal of plaintiff's intentional tort claims against co-defendant County of Monmouth.  We vacate the court's dismissal of the other remaining claims as premature, and remand for discovery and other further proceedings.

## I.

The record in its present incomplete state reflects the following pertinent facts and allegations.  The case arises out of plaintiff GinaMarie Gomes's brief incarceration at the Monmouth County Correctional Institution (the "MCCI" or the "County jail"), where defendants allegedly denied plaintiff access to her prescribed antibiotic medication.  The MCCI is a unit within defendant County of Monmouth, a public entity.  Co-defendant Correct Care Solutions, Inc. ("CCS") is a private company.  During the relevant time period, CCS provided medical

services to inmates housed at the MCCI pursuant to a contract with the County.[1]

On June 2, 2012, plaintiff reported to the MCCI because of an acknowledged parole violation. As part of the intake process that day, the medical staff conducted an initial screening in which plaintiff disclosed her medical history. A mental health screening was also conducted, which found nothing of particular relevance.

According to the screening forms, plaintiff alerted the medical staff that she suffered from asthma, heroin withdrawal, kidney disease, hepatitis C, and several other medical issues. She reported that she had seen a physician within the preceding two weeks regarding "kidney issues." Plaintiff also reported that she had been prescribed a variety of medications, including Cipro, a broad-spectrum antibiotic, and an asthma inhaler. All of the medical staff at the jail who performed these intake services allegedly were employees of CCS.

According to plaintiff, Cipro had been prescribed by her physician and filled at a pharmacy prior to her admission at the MCCI to address a "severe infectious condition." For reasons that remain unclear, the antibiotic was confiscated from plaintiff during the intake process. The screening records

---

[1] The parties have not furnished us with a copy of the contract.

indicate that medical staff ordered a new five-day dosage of Cipro, but that prescription apparently was cancelled pending blood work and the jail's receipt of plaintiff's prior medical records. Plaintiff contends that she never received a dosage of Cipro, or any other antibiotic, during her time at the MCCI.

Over the course of the next twenty-three days, plaintiff repeatedly complained of a sore throat, coughing, and other ailments. She also began complaining of lower back pain and decreased mobility. Plaintiff was seen by CCS medical personnel on twenty-seven occasions during this time, and she was prescribed various palliative medications. Nearly all of the documents and records relating to plaintiff's care at the MCCI bear the CCS company name and logo.

By June 25, 2012, plaintiff's back pain and mobility issues had become so acute that she was transferred to a local hospital. Further medical investigation revealed that she was suffering from a "large epidural abscess with cord compression," a diagnosis which plaintiff alleges has left her permanently paralyzed and incontinent. She further alleges that the condition could have been prevented had the medical staff at the jail provided her with the Cipro that she was originally prescribed and had brought with her to the facility.

Through her counsel, plaintiff initially served a notice of tort claim upon the County, the MCCI, and the State Attorney General's Office on August 24, 2012. Plaintiff's counsel received a written response dated December 26, 2012 from PMA Companies ("PMA"), the third-party administrator for the County, acknowledging receipt of the notice. The response further stated in relevant part:

> We have reported the claim as well to Correct Care Solutions, of Memphis, Tennessee. This is the private contractor which provides the medical staff at Monmouth County Correctional Institution. Their insurance carrier is Allied Insurance, and I have been advised a claim has been reported to this company.

Plaintiff's counsel separately received a letter from the Office of the Attorney General[2] informing her that MCCI was a "local public entity" and that the claim, therefore, did not involve the State.

Plaintiff thereafter filed a six-count complaint in the Law Division against the County, CCS, and various fictitious parties. The complaint asserts various claims of negligence, intentional tort, and breach of contract. Each count is premised on a theory that defendants negligently or

---

[2] After this appeal was briefed, we invited the Attorney General to participate as an amicus or intervenor to address the statutory issues raised here under the Tort Claims Act. The Attorney General declined our invitation.

intentionally confiscated and withheld plaintiff's prescribed medication, causing her personal harm. Although plaintiff does not explicitly style any of her claims as claims for medical negligence or medical malpractice, she alleges in count four several related theories of liability, including negligent observation; inadequate medical testing procedures; inadequate documentation and record keeping; negligent hiring of medical staff; and failure to "adhere to the Internal Management Procedures for Medication Administration as mandated and required by, for and of the New Jersey Department of Corrections Internal Management Procedures[.]"

The co-defendants, the County and CCS, each moved to dismiss the complaint in lieu of an answer. The primary arguments advanced by defendants in favor of dismissal were that: (1) plaintiff failed to serve a notice of tort claim upon CCS; (2) plaintiff failed to state a prima facie claim of negligence or intentional tortious conduct against either defendant; and (3) plaintiff is not an intended beneficiary of the contract between the County and CCS and therefore lacks standing to complain about any breaches of that agreement.

After hearing oral argument, the motion judge dismissed the complaint with prejudice as to both defendants. In his written statement of reasons, the judge ruled that plaintiff's lawsuit

against CCS was barred under the TCA because she had not served a tort claims notice upon the contractor within the ninety-day period set forth in N.J.S.A. 59:8-8.

The judge determined that CCS, as the provider of medical care to inmates at a county jail, is a "public entity" within the meaning of the statute. In making this finding, the judge substantially relied upon this court's opinion in Hoag v. Brown, 397 N.J. Super. 34, 47-48, 53 (App. Div. 2007), which treated an employee of a private contractor that provided medical services to a State prison as an employee of the State for purposes of her claim that she had been harassed in her workplace in violation of the Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1 to -42. The judge also noted unpublished opinions of this court and the trial court likewise treating employees of a private contractor to a State prison to be the functional equivalent of public employees working for the prison.[3]

The judge reasoned that because the medical staff that allegedly acted negligently here worked at the jail and could be

---

[3] We do not cite the unpublished opinions, as they are non-precedential. R. 1:36-3. That said, we recognize that the notice issue presented here has not been the subject of a reported case, and that there appear to be several unreported opinions that have addressed the issue. We by no means fault the trial judge for considering the unpublished cases, as he is permitted to do under Rule 1:36-3, in his conscientious effort to grapple with this issue without the guidance of precedent.

considered the functional equivalent of public employees for certain purposes as in Hoag, their employer CCS should be treated as a public entity that must be served with a tort claims notice. Since no such timely notice was served upon CCS, the judge dismissed plaintiff's tort-based claims against that co-defendant. The judge rejected plaintiff's argument that her service of notice upon the County sufficed as notice to CCS under the circumstances. The judge also rejected plaintiff's claims against CCS founded upon her theory that she was an intended third-party beneficiary of the contract between CCS and the County.

The judge then dismissed all of plaintiff's claims against the County. He rejected, as a matter of law, plaintiff's claims of intentional tort against the County as a public entity because N.J.S.A. 59:2-10 directs that public entities are not vicariously liable for acts or omissions of public employees constituting a "crime, actual fraud, actual malice, or willful misconduct." The judge also found non-viable plaintiff's negligence claims against the County because she had not alleged that any County employees had been involved in her medical screening or her medical care. In addition, the judge dismissed plaintiff's contract-based claims against the County, essentially for the same reasons that the judge had noted in

dismissing the contract claims against CCS. Lastly, the judge dismissed plaintiff's claims for punitive damages.

## II.

On appeal, plaintiff contends that the dismissal of her complaint against both defendants was legally erroneous and premature. She also asserts various criticisms of the manner in which the trial judge proceeded to rule on her claims, complaining about the judge's citation to unpublished authority.

In considering these arguments, we adhere to the well-established principle that before a court dismisses a civil complaint with prejudice, it must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).

Nevertheless, a purely legal question of whether a defendant is insulated from liability because of an immunity or some other statutory provision ideally should be resolved, if possible, at an early stage of the litigation. See Rivera v. Gerner, 89 N.J. 526, 536 (1982) (noting that resolving issues involving the TCA through the pretrial process "is to be

encouraged"); Hurwitz v. AHS Hosp. Corp., 438 N.J. Super. 269, 305-06 (App. Div. 2014) (observing in a statutory immunities case that issues involving those immunities should be adjudicated at an "early stage of litigation," and that an "unfettered right to discovery" would "dilut[e] the practical benefit of the immunity protection"). Indeed, in keeping with the need for expedition, interlocutory appeals from orders granting or denying leave to file a late tort claims notice are now immediately appealable under the Rules of Court as of right. R. 2:2-3(a)(3). Our review of such legal determinations by a trial court is de novo. Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 564 (2012).

### A.

The novel and important issue that most warrants our attention here is whether plaintiff was obligated to serve a separate tort claims notice upon co-defendant CCS, a private contractor to the County. We hold that there is no such obligation, either in the language of the Tort Claims Act or one logically compelled by the policies underlying the statutory scheme.

The TCA indisputably governs causes of action in tort against governmental agencies within New Jersey. Velez v. City of Jersey City, 180 N.J. 284, 289-90 (2004). The Legislature

enacted the Act in recognition of "the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity," while still recognizing that government — which cannot abstain from its obligation to govern in the way a private actor can choose not to engage in certain conduct — "should not have the duty to do everything that might be done." N.J.S.A. 59:1-2; Lopez v. City of Elizabeth, 245 N.J. Super. 153, 164 (App. Div. 1991).

Generally, a defendant organization falls within the purview of the TCA if it is considered a "public entity," as that term is defined in N.J.S.A. 59:1-3. See S.E.W. Friel Co. v. N.J. Turnpike Auth., 73 N.J. 107, 113-17 (1977). Section 1-3 of the Act denotes a "public entity" to include "the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1-3. The Attorney General's 1972 Task Force Comment to N.J.S.A. 59:1-3 clarifies that the TCA's definition of "public entity" is intended to encompass "all entities exercising governmental functions." Margolis & Novack, Claims Against Public Entities, 1972 Task Force Comment on N.J.S.A. 59:1-3 (2016).

The TCA likewise defines the related concept of a "public employee." According to N.J.S.A. 59:1-3, a "public employee" is

simply "an employee of a public entity[.]" The term "employee" means "an officer, employee, or servant, whether or not compensated or part-time, who is authorized to perform any act or service; provided, however, that the term does not include an independent contractor." Ibid. (emphasis added).

When an injured party wishes to pursue a claim against a public entity or a public employee, that party must first file a notice of claim with the public entity involved. Because plaintiff's alleged mistreatment occurred at a County jail, the notice provision concerning local governmental entities pertains. See N.J.S.A. 59:8-7 ("A claim for injury . . . arising under this act against a local public entity shall be filed with that entity.") (emphasis added); N.J.S.A. 59:8-2 ("'[L]ocal public entity' means a public entity other than the State."). This notice must be filed "within 90 days of accrual of the claim," subject to potential extension by the court which is not implicated by the present appeal. N.J.S.A. 59:8-8. If the claimant fails to do so, the statute dictates that he or she "shall be forever barred from recovering against a public entity or public employee[.]" Ibid.

Functionally, this notice requirement within the TCA is largely intended to "compel a claimant to expose his intention and information early in the process in order to permit the

public entity to undertake an investigation while witnesses are available and the facts are fresh." O'Neill v. City of Newark, 304 N.J. Super. 543, 549 (App. Div. 1997) (emphasis added) (quoting Lutz v. Twp. of Gloucester, 153 N.J. Super. 461, 466 (App. Div. 1977)).

As our Supreme Court explained in Beauchamp v. Amedio, 164 N.J. 111 (2000), the recognized goals of the TCA's notice provision are:

> (1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense[;] (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) to inform the State [or local public entity] in advance as to the indebtedness or liability that it may be expected to meet.
>
> [Id. at 121-22 (first alteration in original) (emphasis added) (internal quotations and citations omitted).]

The first two goals are derived from the Task Force Comment to N.J.S.A. 59:8-3, and the last two goals come from Fuller v. Rutgers, 154 N.J. Super. 420, 426 (App. Div. 1977), certif. denied, 75 N.J. 610 (1978). See Margolis & Novack, supra, comment on N.J.S.A. 59:8-8, at p. 266 (2016).

The contents of a proper notice of claim under the TCA are governed by N.J.S.A. 59:8-4, which specifies the following minimum information that a claimant's notice must contain:

> A claim shall be presented by the claimant . . . and shall include:
>
>> a. The name and post[-]office address of the claimant;
>>
>> b. The post-office address to which the person presenting the claim desires notice to be sent;
>>
>> c. The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;
>>
>> d. A general description of the injury, damage, or loss incurred so far as it may be known at the time of presentation of the claim;
>>
>> e. _The name or names of the public entity, employee or employees_ causing the injury, damage or loss, if known; and
>>
>> f. The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.
>>
>> [(Emphasis added).]

Under N.J.S.A. 59:8-6, a public entity may, "by rule or regulation," adopt its own standardized form that requests information beyond the minimum level of detail enumerated in N.J.S.A. 59:8-4.

By way of illustration, pursuant to N.J.S.A. 59:8-4 and -6, the State has issued its own standard tort claims notice form. That form asks the claimant to identify the State "agency" allegedly responsible for the claimant's injury. There is no place on the State form for the claimant to identify a private actor or entity as a responsible party.[4] In fact, case law instructs that a claimant's failure to use the public entity's prescribed form supplying the necessary information can at times support a finding that the entity failed to receive timely and proper notice under N.J.S.A. 59:8-4 and -6. See Wood v. Cty. of Burlington, 302 N.J. Super. 371, 378 (App. Div. 1997) (ruling that plaintiffs were required to use the defendant township's "specialized notice of claim form").

Likewise, although the County of Monmouth does not apparently post a standard tort claims notice form on the

---

[4] See Initial Notice of Claim for Damages Against the State of New Jersey, Dep't of the Treasury, Bureau of Risk Mgmt., http://www.nj.gov/treasury/riskmgt/pdf/ClaimLongForm.pdf (last visited Mar. 31, 2016) (asking the claimant to identify the "state agency or agencies" that caused the damages and the "names of State employees whom you claim were at fault").

Internet, a number of other local governments do.[5]  None of those standard notice forms that our research has uncovered ask the claimant to identify any private actors or entities.  Instead, the forms simply ask the claimant to indicate the governmental agencies involved.

Here, presumably because a standardized form from the County was not readily available, the notice served on the County by plaintiff was a typed letter prepared by her counsel. The letter addressed the six items required for proper notice under N.J.S.A. 59:8-4.

To require claimants such as plaintiff in this case to serve a pre-suit tort claims notice upon a defendant government contractor would clash with both the text of the TCA and the

---

[5] See, e.g., Notice of Tort Claim Against Gloucester County, New Jersey and/or Its Entities, Gloucester Cty., http://www.gloucestercountynj.gov/civica/filebank/blobdload.asp?BlobID=4215 (last visited Mar. 31, 2016) (asking the claimant to identify "each and every Department, Division, Agency or Authority" and "each and every County employee" the claimant contends is liable); Notice of Claim for Damages Against the County of Passaic, Passaic Cty., http://www.passaiccountynj.org/Document Center/View/108 (last visited Mar. 31, 2016) (requesting claimants to specify the "names of County Employees whom you claim were at fault" and "the negligence or wrongful act of the County Agency and County employees which caused your damages"); Tort Claim for Damages Against the City of Trenton, City of Trenton, http://www.trentonnj.org/FCpdf/notice%20of%20tort%20claim.pdf (last visited Mar. 31, 2016) (requesting the "name and address of the City Department, Division or Agency that you claim caused [the claimant's] damage/injury" and "the names of the City employees whom you claim were at fault").

A-1679-14T4

objectives of the statute's notice provision. A private enterprise like CCS is not a "county, municipality, district, public authority, public agency, [or] any other political subdivision or public body in the State." N.J.S.A. 59:1-3. Instead, it is a private independent contractor, whose workers are specifically carved out of Section 1-3's definition of a public employee.

To be sure, as the private contractor hired by Monmouth County to provide medical services based at the County jail, CCS apparently performs certain functions that the County otherwise would have had to perform itself. We agree with defendants that the provision of such medical services to County inmates — had they been performed by the County's own workers — would comprise a governmental function. Under the contractual agreement with CCS, the County has apparently delegated at least some of those functions to CCS. That delegation does not, however, automatically convert CCS into a "public entity" for all purposes under the TCA.

We recognize that, in appropriate circumstances, private contractors retained by State and local governments to perform some of their functions may be protected by the TCA's immunities and special defenses under the concept of "derivative immunity." See, e.g., Rodriguez v. N.J. Sports & Exposition Auth., 193 N.J.

Super. 39, 44-46 (App. Div. 1983) (finding that a private security company that provided security and guards for a public entity was entitled to derivative immunity, noting that a contractor could still be liable for negligence "in the execution of the contract"), certif. denied, 96 N.J. 291 (1984); Cobb v. Waddington, 154 N.J. Super. 11, 18 (App. Div. 1977) (finding that a construction company hired by the State to perform roadwork and install barriers to divert traffic was entitled to derivative immunity), certif. denied, 76 N.J. 235 (1978).

We do not resolve on this limited record whether CCS, in fact, is entitled to such second-hand "derivative" substantive immunity, particularly since the record lacks evidence of the actual contract between the County and CCS, and where discovery on this pivotal subject has yet to be conducted. As an analytical point, however, we note that there would be no need for courts to recognize the concept of derivative immunity if private contractors hired by government agencies were per se regarded for all purposes under the TCA as "public entities."

We need not decide comprehensively in this appeal what portions of the TCA afford protection to private contractors such as CCS, and which portions do not. The narrow issue posed before us is simply whether the notice provisions under N.J.S.A.

59:8-8 and :8-9 require courts to treat such contractors as public entities that must be served with tort claims notices as a precondition to them being sued.  The answer is no.

None of the four goals of the notice provision, as identified by the Supreme Court in <u>Beauchamp</u>, support construing <u>N.J.S.A.</u> 59:8-8 to require service of a notice upon a private entity that serves as a government contractor.  Each of those enumerated purposes involves providing the <u>government</u> with a timely opportunity to consider and react to an incident that the claimant is contending to be a negligent failure by government to discharge its functions properly.  It is of no concern to CCS whether plaintiff has given <u>the County</u> enough time to: (1) administratively review and possibly settle a meritorious claim; (2) adequately investigate the matter and prepare the government's defense; (3) correct the conditions or practices relating to the governmental function that gave rise to the claim; or (4) apprise the government of its potential indebtedness as a matter of fiscal planning.  <u>See</u> <u>Beauchamp</u>, <u>supra</u>, 164 <u>N.J.</u> at 121-22.

We recognize that a private contractor might similarly want to have such claim-related information provided to it, at a pre-suit stage, for its own business or risk management reasons. But the central objectives of the TCA's notice provision are

19

solely related to the benefit of governmental decision-makers and, ultimately, the taxpayers who might bear the costs of a successful claim. It is revealing that the tort claims notice forms that have been created by the State and other public entities are designed to require claimants to specify which governmental agency or agencies that he or she alleges was responsible for causing the injury.

When plaintiff duly served her notice upon the County, she was specifically apprised that the medical staff who dealt with her at the jail were employees of CCS, a private entity, whose insurance carrier was identified in the County's response. Plaintiff should not have been required to assume that she was supposed to provide any more notice of the incident than what she had already supplied to the County. The Legislature has not directed that duplicative notices be served upon private contractors or their insurers. Of course, the Legislature is free to amend the statute to so require, but that is not how the law is presently worded or structured.

The trial judge's reliance on Hoag, supra, 397 N.J. Super. at 53-54, in reaching his contrary conclusion on the notice issue was misplaced. There was no issue of notice involved in Hoag. That case instead turned on whether an employee of a private contractor, who had been working at a State prison and

allegedly mistreated by a State employee supervising her, should be regarded as a public employee for purposes of the State's anti-discrimination laws and the TCA.

Hoag specifically involved whether the worker's relationship with the State Department of Corrections was fundamentally one of an employer and employee for purposes of liability under the LAD. This court found that the State in those circumstances potentially could be regarded as the plaintiff's "employer," given the allegations of its close involvement in the conditions of her workplace, and thereby could be responsible for perpetuating a hostile work environment. Id. at 47-53. Even so, because the record in Hoag was not fully developed as to those issues, we remanded the matter for further factual development. Id. at 53.

We do not endorse the trial judge's overbroad reading of Hoag with respect to the TCA notice issues presented here. Unlike the plaintiff in Hoag, plaintiff Gomes was not employed in a government facility. She was only housed there as an inmate less than a month, before her medical condition became so severe that she had to be transferred to the hospital. The scope of Gomes's statutory obligation to provide notice of her tort claims is fundamentally different in character than the question of whether, by comparison, Ms. Hoag's substantive

rights to a discrimination-free workplace were infringed by the State when it was acting as her employer. For these many reasons, the analysis in <u>Hoag</u> is inapposite to the notice question posed here under <u>N.J.S.A.</u> 59:8-8.

We therefore reverse the trial judge's dismissal of CCS for lack of service of a timely notice under <u>N.J.S.A.</u> 59:8-8. We accordingly reinstate CCS as a co-defendant in the case, and remand for further proceedings.

B.

**[At the discretion of the court, the published version of this opinion omits Part II(B), which addresses issues unrelated to the notice issue.]**

Affirmed in part, reversed in part, and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION