**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2366-18T1

GEOFFREY JONES and
VALERIE CARSWELL (H/W),

     Plaintiffs-Respondents,

v.

CITY OF JERSEY CITY and
HUDSON COUNTY,

     Defendants,

and

JERSEY CITY MUNICIPAL
UTILITIES AUTHORITY,

     Defendant-Appellant.

_____

Submitted October 15, 2019 – Decided February 18, 2020

Before Judges Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2033-18.

Methfessel & Werbel, attorneys for appellant (William Scott Bloom and Leslie Koch, on the briefs).

Lowenthal & Abrams, PC, attorneys for respondent (Regina M. Vogelsong and Anthony R. Gruner, on the brief).

PER CURIAM

In this slip and fall personal injury matter, defendant Jersey City Municipal Utilities Authority appeals from the Law Division's January 11, 2019 order denying its motion to dismiss plaintiffs Geoffrey Jones's and Valerie Carswell's complaint based upon plaintiffs' failure to comply with the Tort Claims Act, (TCA), N.J.S.A. 59:1-1 to 12-3. The motion judge denied defendant's application after he found plaintiffs made a reasonable attempt to serve defendant with the required tort claims notice. On appeal, defendant argues that the motion judge applied the wrong standard to its motion, plaintiffs failed to comply with the TCA, and failed to file a motion to file a late claim. We reverse because plaintiffs never served defendant with a notice of tort claim or filed a motion to file a late claim as required by N.J.S.A. 59:8-8 and N.J.S.A. 59:8-9.

The facts derived from the motion record are summarized as follows. On October 13, 2016, at approximately 11:00 p.m., Jones fell after he stepped onto a street in Jersey City. According to Jones, his foot landed in a hole next to a

storm water grate. The fall caused Jones to sustain various injuries and an aggravation of a pre-existing condition.

On November 1, 2016, plaintiffs served a notice of tort claim on Jersey City, Hudson County, and the State of New Jersey. Hudson County responded that based upon its investigation it found that it bore no liability for Jones's injuries because it did "not own maintain or control" the area where Jones fell. A similar letter was sent by the State. After asking for additional documentation and conducting its own investigation, on July 3, 2017, Jersey City wrote that it "had no prior notice of any problems or defects with the location of loss, therefore, [Jersey City] . . . respectfully den[ied plaintiffs'] claim for damages."

Plaintiffs filed a complaint against Jersey City, Hudson County, and the State on May 23, 2018. In its answer dated June 26, 2018, Jersey City denied it was negligent, and in its Rule 4:5-1(b)(2) certification stated "the additional party who should be joined in this action is [defendant], a separate an[d] autonomous agency." In its September 28, 2018 answers to plaintiffs' interrogatories, Jersey City stated, "[u]pon information and belief, [defendant], a separate and autonomous entity from . . . Jersey City may have made repairs to the hole or broken pavement next to the [storm] water/sewer grate . . . [p]laintiff alleges he fell."

A-2366-18T1

Despite Jersey City's disclosures of defendant's potential liability, plaintiffs never served defendant with a tort claims notice, nor did they file a motion seeking to file a late notice of claim. Instead, plaintiffs filed an amended complaint on October 4, 2018, adding defendant as another responsible party. Plaintiffs alleged, as they did in their original complaint against the other public entities, that defendant caused Jones's injuries by failing "to keep and maintain the public street in question in a reasonable condition," and by defendant "[i]mproperly plac[ing] a storm water/sewer grate in a portion of the street where there is pedestrian traffic."

Defendant filed its motion to dismiss plaintiffs' complaint based upon plaintiffs' failure to comply with the TCA. In response, plaintiffs filed a brief in which they argued they had "substantially complied" with the TCA's notice requirements, claiming that once defendant was identified in Jersey City's answers to interrogatories, plaintiffs "immediately amended their [c]omplaint." Citing to D.D. v. University of Medicine and Dentistry of New Jersey, 213 N.J. 130, 159 (2013), plaintiffs argued they were in substantial compliance with the TCA's notice requirements. Relying on the Court's opinion in Feinberg v. New Jersey Department of Environmental Protection, 137 N.J. 126, 135-36 (1994), they also claimed defendant was "an entity under the Jersey City umbrella," and

therefore its notice to that public entity satisfied plaintiffs' obligation to give notice to defendant under the TCA.

In his oral decision, on January 11, 2019, the motion judge relied on plaintiffs' "reasonable good faith attempt" to give defendant timely notice under the TCA. He stated, "no one would reasonably think that [plaintiffs] would have to put [defendant] on notice for this accident unless and until [plaintiffs] had some indication that [defendant] was doing work in the area." The judge noted that his decision did not depend on whether plaintiffs became aware of defendant's potential liability through Jersey City's answer or its response to plaintiffs' interrogatories.[1] The judge stated that plaintiffs learned of defendant's involvement only a year and a half after Jersey City was given proper notice under the TCA.

The motion judge made note of the importance of hearing cases on the merits and on the assumption that "any doubts which may exist should be resolved in favor of the application or the tort claim application." The judge relied on Feinberg and found that the facts were similar to this case. He further found no importance as to whether Jersey City had authority over defendant.

---

[1] The judge admitted he did not read Jersey City's Rule 4:5-1(b)(2) certification prior to oral argument. During oral argument, the judge reviewed the statement; but stated that it did not change his decision.

A-2366-18T1

The motion judge concluded that plaintiffs made a "reasonable good faith attempt to comply with the notice requirements," and, on that basis, denied defendant's motion. This appeal followed.

Our review of an order denying a motion to dismiss is de novo, "applying the same standard as the trial court." See Cona v. Twp. of Wash., 456 N.J. Super. 197, 214 (App. Div. 2018); see also Gomes v. Cty. of Monmouth, 444 N.J. Super. 479, 486 (App. Div. 2016). Before granting the motion and dismissing a civil complaint with prejudice, a court "must 'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Gomes, 444 N.J. Super. at 486 (alteration in original) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). "Nevertheless, a purely legal question of whether a defendant is insulated from liability because of an immunity or some other statutory provision ideally should be resolved, if possible, at an early stage of the litigation." Ibid.; see also Rivera v. Gerner, 89 N.J. 526, 536 (1982) (noting that resolving issues involving the TCA through the pretrial process "is to be encouraged").

We focus our review on the crux of the matter, namely whether plaintiffs were entitled to amend their complaint to name defendant without first serving defendant with a notice of tort claim or filing a motion to serve a late notice. We conclude they were not permitted to do so.

We begin our analysis with an overview of the TCA that governs tort claims against public entities and public employees. Rogers v. Cape May Cty. Office of the Pub. Def., 208 N.J. 414, 420 (2011). "'Public entity' includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1-3. The TCA "is the statutory mechanism through which our Legislature effected a waiver of sovereign immunity." D.D., 213 N.J. at 133. "The guiding principle of the [TCA] is that 'immunity from tort liability is the general rule and liability is the exception . . . .'" Coyne v. N.J. Dep't of Transp., 182 N.J. 481, 488 (2005) (quoting Garrison v. Twp. of Middletown, 154 N.J. 282, 286 (1998)).

The TCA "establishes the procedures by which claims may be brought." Beauchamp v. Amedio, 164 N.J. 111, 116 (2000). One of the procedures it imposes on a party seeking to bring a tort claim is a requirement to file a tort claim notice. D.D., 213 N.J. at 134; see also N.J.S.A. 59:8-1 to -11. The notice has a number of required components including: (1) when it has to be served,

N.J.S.A. 59:8-8; (2) what information it must contain, N.J.S.A. 59:8-4; and (3) where it has to be served, N.J.S.A. 59:8-7.

The TCA requires that the notice must be served within ninety days of the claim's accrual. N.J.S.A. 59:8-8. "[T]he first task [therefore] is always to determine when the claim accrued." Beauchamp, 164 N.J. at 118. Generally, "a claim accrues on the date on which the underlying tortious act occurred." Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 134 (2017) (citing Beauchamp, 164 N.J. at 117). However, "where the victim either is unaware that he has been injured or, although aware of an injury, does not know that a third party is responsible," the date of accrual is tolled to until when the victim should have reasonably known of the injury or the responsible party. Beauchamp, 164 N.J. at 117-18.

"Whether the discovery rule applies depends on 'whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another.'" Ben Elazar, 230 N.J. at 134 (quoting Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001)). Therefore, the discovery rule only applies where the victim is "reasonably unaware that a third party may also be responsible." Id. at 135. "Once the accrual date is" determined, "public-policy reasons" require the injured party to comply with the

TCA's "short period for service of a notice of claim on the responsible public entity."  Ibid.

Where the injured party does not comply with the TCA's requirement within the ninety-day period, the TCA identifies the procedure through which the court can grant permission to file a late notice of tort claim, but only under "extraordinary circumstances."  N.J.S.A. 59:8-9.  Specifically, the TCA grants the court "discretion" to permit the filing of a late tort claim notice "at any time within one year after the accrual of his [or her] claim provided that the public entity or the public employee has not been substantially prejudiced thereby." Ibid.  However, that permission is contingent upon the claimant filing a motion with the court seeking

> permission to file a late notice of claim[, which is] . . . supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his [or her] failure to file notice of claim within the period of time prescribed by section 59:8-8 of this act  or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.
>
> [Ibid. (emphasis added).]

The requirement to file a motion seeking permission to file a late tort claim notice applies whether the date of accrual is established by the date of the injury or through application of the discovery rule. See McDade v. Siazon, 208 N.J. 463, 475 (2011). In either event, a plaintiff must file the motion and establish "extraordinary circumstances" that excuse the delay and that the public entity would not be "substantially prejudiced." Lowe v. Zarghami, 158 N.J. 606, 624-25 (1999); see also O'Donnell v. N.J. Tpk. Auth., 236 N.J. 335, 345-46 (2019). Whether extraordinary circumstances exist, must be determined on a case-by-case basis. O'Donnell, 236 N.J. at 346-47, 352 (holding that when "the totality of facts and circumstances are extraordinary," a claimant should be able to "pursue his or her claims against the public entity"). Allowing an exception based on no or limited proof would contravene the legislature's intent to heighten the level of proof needed to justify excusing a late filing. See D.D. 213 N.J. at 149-52.

As the Court has observed, "the [TCA] is 'strictly construed to permit lawsuits only where specifically delineated,'" McDade, 208 N.J. at 474 (quoting Gerber ex rel. Gerber v. Springfield Bd. of Educ., 328 N.J. Super. 24, 34 (App. Div. 2000)) and its "notice requirements are an important component of the statutory scheme," ibid. For that reason, "the filing of a[n amended] complaint

would not be a substitute for the notice required by statute . . . ." Guzman v. Perth Amboy, 214 N.J. Super. 167, 171-72 (App. Div. 1986).

Here, plaintiffs never complied with any of the TCA's requirements as to its claim against defendant. There was no motion filed, no certifications setting forth any facts about plaintiffs' efforts to identify defendant as a responsible entity, or why no notice was served after Jersey City identified defendant as a responsible party in its answer to the complaint in June 2018. Under these circumstances, the motion judge should have granted defendant's motion to dismiss.

Plaintiffs' reliance on its service of notice to Jersey City is misguided. Defendant, a municipal utility corporation, was created under the "Municipal and County Utilities Authorities Law," N.J.S.A. 40:14B-1 to -78, and is a municipal corporation and public entity separate and distinct from Jersey City. See N.J.S.A. 40:14B-4(a); see also McDade, 208 N.J. at 469 (stating that a township municipal utility authority is a "separate and distinct entit[y]" from the township). Plaintiffs' service of their tort claim notice upon Jersey City, the wrong public entity, does "not absolve plaintiffs of the obligation to promptly identify the [proper public entity] and serve a timely notice of claim." McDade, 208 N.J. at 479. Moreover, the TCA "imposes no obligation on [a served public

entity] to forward the notice of claim to the [responsible non-party] or to notify" plaintiffs of the non-party's involvement. O'Donnell, 236 N.J. at 350.

Plaintiffs' reliance on the Court's holding in Feinberg is equally unsupported by the difference in the relationship between the entities involved in that case, the New Jersey Department of Environmental Protection, the Office of the Attorney General, and the New Jersey Water Supply Authority, as compared to the distinct public entities in this case. See Feinberg, 137 N.J. at 128, 135.

Similarly, plaintiffs' argument and the motion judge's reliance upon the discovery rule and plaintiffs reasonably being unaware of defendant's involvement until Jersey City answered interrogatories is also misplaced. In Ben Elazar, the Court considered the application of the discovery rule and the TCA to an accident in which no "circumstances . . . appear[ed] to implicate a third-party public-entity defendant." Ben Alazar, 230 N.J. at 127. Prior to holding that the discovery rule applied to those circumstances, the Court discussed its earlier holdings in Beauchamp and McDade. The Ben Alazar Court noted that in Beauchamp, the Court "adher[ed] . . . to essential considerations in stating that '[t]he date of accrual of her cause of action was the date of the accident in which she knew she was injured and that a public entity was

responsible.'" Ben Alazar, 230 N.J. at 138 (quoting Beauchamp, 164 N.J. at 119). It also explained that once a plaintiff knows he or she is injured and that "a public entity was responsible," the cause of action accrued, and if the plaintiff failed to timely identify the responsible public entity, the onus was on the plaintiff to move for leave to file a late tort claim and establish extraordinary circumstances. See id. at 137-39.

The Ben Alazar Court also stated while discussing McDade and distinguishing the facts in Ben Alazar from that case and Beauchamp that,

> [a]lthough 'not immediately aware of the true identity of the [cause of the fall],' the plaintiff was responsible under the discovery rule to exercise reasonable diligence to determine the correct public entity to sue. The plaintiff in McDade, like the plaintiff in Beauchamp knew immediately that public entities were involved, but did not look diligently enough to identify all public entities. The McDade opinion notes that the plaintiff had failed to conduct an inspection of [the cause of the fall], investigate its owner, or search the public record.
>
> [Id. at 138-39 (citations omitted).]

Here, plaintiffs never established through any evidence that they took any action, diligent or otherwise, after Jones's fall to establish which public entities were responsible at any time prior to receiving Jersey City's answers to interrogatories. By not filing the required motion and not submitting any

evidence of their efforts, if any, the motion judge could not determine whether plaintiff established extraordinary circumstances warranting the service of a late notice of tort claim.

Reversed and remanded for entry of an order granting defendant's motion and dismissing plaintiffs' complaint against defendant with prejudice. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION