**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2626-23

TRACEY TULLOCK on her
own behalf and on behalf of
ESTATE OF JORDAN HERRON,

     Plaintiffs-Appellants,

v.

JERSEY CITY HOUSING
AUTHORITY, CITY OF
JERSEY CITY, and JERSEY CITY
DEPARTMENT OF PUBLIC
SAFETY,

     Defendants-Respondents.

_____

Submitted September 11, 2025 – Decided September 30, 2025

Before Judges Marczyk and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0401-21.

The Maglione Firm, PC, attorneys for appellants (Dean R. Maglione, of counsel; Ashley A. Smith, on the briefs).

Wilson Elser Moskowitz Edelman & Dicker, LLP, attorneys for respondent Jersey City Housing Authority (Robert C. Neff, Jr., of counsel and on the brief).

Brittany M. Murray, Acting Corporation Counsel, attorney for respondents City of Jersey City and Jersey City Department of Public Safety (Chaunelle Robinson, First Assistant Corporation Counsel, of counsel and on the brief).

PER CURIAM

This lawsuit arises from the tragic death of a bystander, who was fatally shot during a drive-by shooting. Plaintiff Tracey Tullock, individually and as administrator of the estate of her son, Jordan Herron, appeals from the March 18, 2024 order granting summary judgment in favor of defendants under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Having considered these arguments in light of our review of the record and applicable legal principles, we affirm.

I.

We recite the salient facts and review the record in the light most favorable to plaintiff as the non-moving party. Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 125 (2023). Defendants Jersey City Housing Authority (JCHA) entered into a "Shared Services Agreement" (Agreement) with the City of Jersey City (Jersey City), and by extension, the Jersey City Department of Public Safety

2

(JCDPS) (collectively, City defendants), effective from January 9, 2017, through January 8, 2018. The parties exercised the one-year renewal option in 2018 and on August 21, 2019. The 2019 Agreement expressly provides that, "[JCHA] agree[d] that during the course of this [a]greement, [h]ousing [u]nit [p]olice [o]fficers [, from the Jersey City Police Department (JCPD),] will be assigned to [JCHA] public housing developments from 3 p.m. to 11 p.m. daily, regular hours." The Agreement further provides that the "Housing Unit Police Officers [would] patrol different housing development sites as determined in consultation with the [JCHA]."

In his deposition, JCHA's asset manager described Curries Woods, a public housing complex for low- and moderate-income families operated by JCHA under programs administered by the U.S. Department of Housing and Urban Development, as a property made up of townhouses and a high-rise building. He testified that security cameras were installed throughout the development. The asset manager further testified the development was enclosed by a gated perimeter, with the main vehicle entrance located on Garden Terrace, featuring designated entrance and exit lanes. That main entrance was equipped with an operating camera; but the gate arms were nonoperational, and was unsecured due to budgetary constraints. The other entrance was locked.

A-2626-23

The asset manager further stated the police services provided through the Agreement—lease enforcement, background checks, and security cameras monitoring—were sufficient security for the property. In regard to shootings at JCHA properties, he testified that one homicide had occurred at a JCHA property between July 1, 2017, and June 30, 2018. However, he was unaware of the specific circumstances or its precise location.

In regard to the policing services, the JCDPS director testified that he was, in part, responsible for overseeing the operation of the JCPD. He also testified the Agreement created a formal public housing unit using the $280,000 federal grant money received by Jersey City to provide policing services to all JCHA properties. The director explained Housing Unit officers performed their policing services in public housing "as needed." He further stated the policing services provided to JCHA were the same for all other Jersey City residents. These services included responding to radio calls, assigning a foot or walking post when additional police officers were available, and deploying extra police officers at large events to ensure safety. According to the director, Curries Woods "tend[ed] to be quiet" and was considered a "low priority" relative to other, more violent locations in Jersey City.

A-2626-23

From 2009 through 2018, plaintiff, her daughter, and Herron lived at Curries Woods. However, in December 2018, plaintiff relocated following the death of Herron's close friend at a nearby store.

Plaintiff testified during her deposition that on the evening of July 19, 2019, Herron and his stepbrother visited their paternal grandmother who resided at Curries Woods. She stated that she learned from her stepson that at approximately 12:44 a.m. on July 20, Herron had been tossing a football with two "little kids" in the street at the corner of New Heckman Drive and Garden Terrace. Plaintiff's stepson was standing in front of the building at 3 New Heckman Drive.

A van entered Curries Woods from the vehicular entrance with the unsecured security booth and non-operating gate arm. Four men exited the van; none of them resided in Curries Woods, and they started shooting. As Herron and his stepbrother ran across the street, Herron fell to the ground. According to plaintiff, she was told that Herron stated he could not breathe, then got up, and collapsed in his stepbrother's arms. Herron was picked up by friends, placed in a car, and taken to the hospital, where he was pronounced dead at 1:02 a.m.

During deposition, plaintiff testified the assignment of JCPD officers to Curries Woods was sporadic. Additionally, security guards were not assigned

5

to the site. She also stated that the two gate arms at the unsecured main entrance were inoperable and remained raised all the time. During plaintiff's nine-year residency in Curries Woods, there were "[t]wo or three" shootings involving residents.

Plaintiff filed a complaint asserting claims under the TCA; the New Jersey Survivor's Act, N.J.S.A. 2A:15-3; and the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6. The complaint alleged defendants failed to provide reasonable security measures despite having actual knowledge of the known risk of violent criminal activity at Curries Woods. Specifically, there should have been security measures in place, "including but not limited to closed gates accessible only to residents and their guests, and/or security personnel at gatehouses." In essence, the complaint asserts that defendants failed to comply with the terms of the Agreement.

The parties engaged in protracted and contentious discovery, during which the discovery deadline was extended six times, resulting in a total of 930 days allotted for discovery. In an August 4, 2023 order, the motion judge extended the discovery period by ninety days to November 12, 2023, established a deadline of September 22 for the service of all plaintiffs' expert reports and also set an arbitration date. Plaintiff sought another ninety-day extension, which was

6

denied by the motion judge because she failed to demonstrate exceptional circumstances under Rule 4:24-1(c).

Forty-five days after the deadline and four days before the close of discovery, plaintiff served defendants with the thirty-two-page security and policing expert report by email. JCHA moved to bar the report and expert testimony on the grounds the report was untimely served. Plaintiff cross-moved to permit the late service of the expert report and extend discovery. In two December 22, 2023 orders, the motion judge granted JCHA's motion to bar the security report and denied plaintiff's cross-motion to permit late service.[1] Both orders explained the motion judge declined to revisit prior rulings regarding discovery, which had previously denied multiple requests to adjourn the arbitration and extend the discovery period.

Thereafter, defendants moved for summary judgment arguing plaintiff could not establish negligence without an expert and they were immune from liability under the TCA. The City defendants further argued plaintiff lacked evidence demonstrating proximate causation between their actions or inactions

---

[1] We denied plaintiff's motion for an interlocutory appeal of this order. See Tullock v. Jersey City Hous. Auth., No. AM-000258-23 (App. Div. Feb. 12, 2024).

7

and plaintiff's alleged damages. Plaintiff opposed both motions and cross-moved for summary judgment solely against the City defendants.

Following oral argument, in a March 18, 2024 order, the motion judge granted summary judgment in favor of defendants and dismissed plaintiff's complaint. Plaintiff's cross-motion for summary judgment was denied.

In his oral decision, the judge reasoned plaintiff had no expert witness to establish a connection between any of the violations of the Agreement and Herron's shooting, or to demonstrate any such violations could have made a difference regarding the drive-by shooting that occurred at midnight in Curries Woods. Therefore, without an expert to opine on liability, plaintiff was unable to establish defendants owed a duty of care with regard to security at the property.

The judge further reasoned that the common knowledge doctrine did not apply in this case, as the adequacy of security measures and foreseeability of criminal violence within the context of a public housing complex are matters beyond the average juror's understanding. The judge noted that plaintiff's contention—that a staffed booth or additional police presence would have prevented the drive-by shooting—was "pure speculation."

A-2626-23

The motion judge also addressed plaintiff's argument that the City defendants should have provided police protection at the unmanned booth at midnight. The judge explained the City defendants had immunity under the TCA, as the allegations against them involved discretionary decisions regarding the allocation and provision of police services.

## II.

On appeal, plaintiff argues the trial court erred in granting summary judgment by finding: (1) defendants were entitled to immunity under the TCA; and (2) the common knowledge doctrine was not applicable. Plaintiff also argues, for the first time, that the granting of summary judgment resulted in a manifest injustice to her.

We review a denial of summary judgment de novo, "applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022) (citing Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). In considering whether to grant summary judgment, a court must "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244

N.J. 567, 582 (2021) (quoting R. 4:46-2(c)).  "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  We do not defer to the trial court's legal analysis or statutory interpretation.  RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018).

III.

The TCA "indisputably governs causes of action in tort against governmental agencies within New Jersey."  Gomes v. Cnty. of Monmouth, 444 N.J. Super. 479, 487 (App. Div. 2016) (citing Velez v. City of Jersey City, 180 N.J. 284, 289-90) (2004); see also N.J.S.A. 59:2-1(a); Nieves v. Off. of the Pub. Def., 241 N.J. 567, 571 (2020).  It provides "a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission."  Polzo v. Cnty. of Essex (Polzo II), 209 N.J. 51, 65 (2012) (quoting Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002)).  Therefore, under the TCA, "immunity has become the general rule and liability is the exception."  Henebema v. S. Jersey Transp. Auth., 219 N.J. 481, 490 (2014) (citations omitted).

"The standard for liability under the TCA depends on whether the conduct of individuals acting on behalf of the public entity was ministerial or discretionary." Est. of Gonzalez v. City of Jersey City, 247 N.J. 551, 571 (2021) (quoting Henebema, 219 N.J. at 490). "When a public entity's . . . actions are discretionary, liability is imposed only for 'palpably unreasonable conduct.'" Ibid. (quoting Henebema, 219 N.J. at 495). Accordingly, public entities "[have] the burden to plead and prove [their] immunity under the TCA." Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 582 (2009) (citing Kolitch v. Lindedahl, 100 N.J. 485, 497 (1985)).

N.J.S.A. 59:2-3(a) provides that "[a] public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity." Furthermore, under N.J.S.A. 59:5-4, " a public entity . . . is [not] liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."

At the time of the drive-by shooting, defendants were not contractually obligated to provide Housing Unit Police Officers on site. The Agreement expressly provides that defendants would assign daily policing services during regular shift hours from 3:00 p.m. to 11:00 p.m. for all JCHA properties. The assignment of those officers was determined by the needs and statistics of each

property. The record demonstrates that defendants complied with the terms of the Agreement in providing security at Curries Woods, which was characterized as "quiet" and a "low priority" development in comparison to other areas of Jersey City.

We hold, under these circumstances, defendants' decision to provide sporadic police service constituted "[a] 'discretionary act . . . [that] call[ed] for the exercise of personal deliberations and judgment, which in turn entail[ed] examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.'" S.P. v. Newark Police Dept., 428 N.J. Super. 210, 230 (App. Div. 2012) (quoting Kolitch, 100 N.J. at 495) (emphasis omitted) (citation and internal quotation marks omitted). Therefore, defendants met their burden and are entitled to immunity.

IV.

As we have noted, plaintiff's claims against defendants are barred by the discretionary immunity provision under the TCA. Nevertheless, for the sake of completeness, we next consider plaintiff's argument that the JCHA's failure to secure the gate at the unmanned main entrance was the proximate cause of Herron's death. We are not persuaded.

A-2626-23

We conclude summary judgment was appropriate because plaintiff failed to establish proximate causation under both the TCA and negligence theories. Plaintiff contends defendants created a dangerous condition by failing to provide a consistent police presence at Curries Woods, despite their alleged awareness of ongoing violence in the area. She further alleges that defendants' failure to provide adequate security measures and police protection caused the shooting and, ultimately, the death of her son.

Under N.J.S.A. 59:4-2, a plaintiff (1) "must establish the existence of a dangerous condition," (2) "that the condition proximately caused the injury," (3) "that it created a reasonably foreseeable risk of the kind of injury which was incurred," (4) "that either the dangerous condition was caused by a negligent employee or the entity knew about the condition, and" (5) "that the entity's conduct was palpably unreasonable." Stewart v. N.J. Tpk. Auth./Garden State Parkway, 249 N.J. 642, 656 (2022) (quoting Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001) (internal quotation marks omitted) (quoting N.J.S.A. 59:4-2)). Failure of any one of these elements will cause a plaintiff's claim to fail. Ibid.

To sustain a cause of action for negligence, a plaintiff must establish four elements: "'(1) a duty of care; (2) a breach of that duty; (3) proximate cause;

13

and (4) damages.'" Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. Cnty. of Essex (Polzo I), 196 N.J. 569, 584 (2008)). Plaintiff must do so "by some competent proof." Ibid. (quoting Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014)). The mere happening of an accident does not raise a presumption of negligence. See Allendorf v. Kaiserman Enters., 266 N.J. Super. 662, 670 (App. Div. 1993).

Similarly, proximate cause is an essential element of a negligence claim. Ptaszynski v. Atl. Health Sys., Inc., 440 N.J. Super. 24, 38 (App. Div. 2015). Generally, questions of proximate cause are issues for the jury. See Komlodi v. Picciano, 217 N.J. 387, 419 (2014); Beadling v. William Bowman Assocs., 355 N.J. Super. 70, 88 (App. Div. 2002).

Plaintiff was precluded from offering expert testimony to establish that the alleged failure to provide services caused the drive-by shooting and Herron's death. Accordingly, plaintiff argues that her claims fall within the common knowledge doctrine.

Plaintiff's reliance on Foster v. Newark Housing Authority, 389 N.J. Super. 60 (App. Div. 2006) is misplaced. Foster addressed liability for a dangerous condition of property maintained by the Housing Authority, not for allegations concerning the adequacy of police protection. Id. at 69.

A-2626-23

Plaintiff's contention that expert testimony is not needed under the common knowledge doctrine is unavailing. The claims at issue—the adequacy of security measures, the foreseeability of criminal activity at Curries Woods, the comparison of criminal activity at Curries Woods to other areas of Jersey City, and conformity with accepted police standards—are not within the ordinary experience and knowledge of jurors. Cowley v. Virtua Health Sys., 242 N.J. 1, 17 (2020) (citing Hubbard v. Reed, 168 N.J. 387, 394 (2001)).

We, therefore, conclude the issues regarding the adequacy of police services and security measures, and their relationship to proximate causation, are not within the purview of ordinary juror experience. A reasonable jury could not, on the basis of common understanding alone, determine the existence of a dangerous condition or that defendants' conduct was palpably unreasonable. Thus, plaintiff cannot establish proximate cause as a matter of law. Defendants' summary judgment motions were therefore appropriately granted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

15

A-2626-23