**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5185-18T3

JESSICA TAWIL,

     Plaintiff-Appellant,

v.

SHIVAM TRAVEL, INC., a/k/a
SHIVAM TRAVEL, DHRUV
BHATT, SAMANTHA TRIPP,
CHRISTINA TRIPP, 209
FRANKLIN CORPORATION,
STEVEN SCHMIDT, ESTATE OF
MAUREEN SCHMIDT, DANIEL
TRIPP, COUNTY OF PASSAIC,
NEW JERSEY DEPARTMENT OF
TRANSPORTATION and STATE
OF NEW JERSEY,

     Defendants,

and

TOWNSHIP OF WEST MILFORD,

     Defendant-Respondent,
_____

Argued October 13, 2020 – Decided December 7, 2020

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1277-17.

Steven Benvenisti argued the cause for appellant (Davis, Saperstein & Salomon, PC, attorneys; Steven Benvenisti, of counsel and on the brief; Jorge R. de Armas, on the brief).

R. Scott Fahrney argued the cause for respondent (Kaufman, Semeraro & Leibman, LLP, attorneys; R. Scott Fahrney, on the brief).

PER CURIAM

Plaintiff Jessica Tawil appeals from an order granting summary judgment to defendant Township of West Milford, dismissing her complaint for damages arising from the extensive personal injuries she sustained as a passenger in a motor vehicle accident. In her complaint, plaintiff alleged that defendant was liable because it failed to install advisory speed reduction signs along the curved portion of the road where the accident occurred. The motion judge granted summary judgment after concluding defendant was immune from liability under New Jersey's Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 (TCA).

On appeal, plaintiff argues that the judge erred because immunity did not apply as defendant's failure to install the signs created a dangerous condition about which defendant had notice, defendant's inaction was "palpably

2

unreasonably," and as explained by plaintiff's expert, under the Manual on Uniform Traffic Control Devices (MUTCD), defendant was required to install an advisory speed reduction plaque and a curve warning sign in addition to the already-present black-and-yellow chevron signs on the road that indicated an approaching curve. We disagree with plaintiff's contentions and affirm, substantially for the reasons expressed by the motion judge.

On November 15, 2014, then sixteen-year-old plaintiff was a rear-seat passenger in a car driven by her friend Dhruv Bhatt.[1] At the time, the weather was clear and the roads were dry. As he drove along Clinton Road in defendant's community, Bhatt did not use his cell phone nor was he otherwise distracted, he had not consumed any alcohol, and there were no known mechanical issues with the vehicle.

As Bhatt drove on Clinton Road, which he had previously driven upon "close to about a dozen times," he approached a curve and his vehicle began to understeer. Bhatt then lost control of the vehicle, which veered off the side of the road and collided with a nearby tree. Plaintiff was tragically and severely injured in the accident, sustaining injuries that rendered her a paraplegic.

---

[1] Bhatt and all of the other defendants named in the complaint were either dismissed from the action by agreement or court order prior to this appeal being filed.

A-5185-18T3

When police responded to the accident scene, Bhatt told an officer that he was driving somewhere between thirty-five and forty-five miles per hour and that he recalled the speed limit for the road being thirty-five miles per hour. The Crash Data Retrieval (CDR) system from Bhatt's vehicle disclosed that approximately three seconds prior to the crash, the vehicle was traveling just over forty-eight miles per hour.

At his deposition, Bhatt could not recall whether there were any warning signs for the curve on his side of the road but admitted that a picture shown to him which depicted the location of the incident when approaching from the opposite direction contained yellow-and-black warning signs. According to Police Officer Suzanne Novakowski, one of the responding officers, on the portion of road where Bhatt was driving there were at least four reflective arrows indicating a curve was approaching. She stated that Bhatt's driving over thirty-five miles per hour was a factor contributing to the accident. Sergeant George Richnavsky, another responding police officer, stated that Clinton Road has chevron signs on the road surface indicating an approaching curve.

On January 7, 2015, plaintiff served defendant with a notice of tort claim as required by the TCA. In the notice, plaintiff stated defendant "fail[ed] to provide adequate traffic signs, markings, or other devices for the safety of those

4

traveling at or near Clinton Road." Approximately two years later, plaintiff filed a complaint, which she later amended to include defendant. Defendant filed an answer and the parties thereafter engaged in discovery.

During discovery, various fact witnesses testified at depositions and expert reports were exchanged about whether there was adequate signage installed on Clinton Road relating to its curved portion where the accident occurred. Eric Miller, defendant's supervising engineer, testified that the maximum speed limit along Clinton Road was either twenty-five or thirty-five miles per hour, depending on the section.

Gordon Meth, from Robson Forensics, prepared an expert report on plaintiff's behalf. After reviewing a litany of materials, including police reports, various deposition transcripts, photos of the accident scene, manuals on road design and traffic control devices, and defendant's ordinances, Meth concluded that the "failure of [defendant] to provide either appropriate speed limit signs and/or turn[-]warning signs along Clinton Road created a palpably unreasonable dangerous condition to motorists."

According to Meth, the speed limit at the scene was thirty-five miles per hour and there was a chevron sign indicating the location of the curve and a speed limit sign in advance of the accident site. Meth opined that defendant

should have included "horizontal alignment warning signs" in the immediate vicinity of the accident because of the fifteen-miles-per-hour difference between Clinton Road's thirty-five-miles-per-hour speed limit and the appropriate advisory speed limit for the curve of twenty miles per hour. Meth based this analysis on guidance provided by the MUTCD.[2] However, the MUTCD guidance applied to roads that had an average of 1000 vehicles traveling on them every day. Meth did not perform or rely upon any traffic studies or empirical data about the road's traffic volume.

Meth also considered the area's history of car accidents. He found that in the approximately seven years before plaintiff's accident there were twenty-six accidents near the site. Of these accidents, four occurred at or near the same site as plaintiff's accident within a three-year period from 2007 to 2010. Aside from noting that they were not attributable to deer or bears in the roadway, Meth did not provide any information about the cause of those accidents.

---

[2] This manual has been adopted by the New Jersey Department of Transit under N.J.A.C. 16:27-3.1 as the uniform system of traffic control signal devices pursuant to N.J.S.A. 39:4-120 and N.J.S.A. 39:4-183.27. According to the manual, Horizontal Alignment Warning signs may be used on roadways with less than 1000 average cars per day subject to engineer discretion, and advisory speed plaques should only be used to supplement a warning sign. They "shall not be installed as a separate sign installation."

John Desch, P.E. and other members of his firm, John Desch Associates (collectively JDA), prepared an expert report on behalf of defendant. According to JDA and information from the New Jersey Department of Transportation, Clinton Road had an estimated 185 vehicles traveling on it each day. In reviewing the onboard video recordings captured from the police vehicles that evening, JDA noted that there were two twenty-five-miles-per-hour speed limit signs and one thirty-five-miles-per-hour sign along northbound Clinton Road and two black-and-yellow chevron signs on either side of the road at the scene of the collision that warned of the oncoming curve.

According to JDA, from 2004 to 2017, there were a total of 115 accidents along Clinton Road. Thirty-two of those occurred within the same approximate location as this collision, and according to JDA, four collisions out of those thirty-two "possibly occurred at the same location and northerly travel direction as this collision." Of the four accidents, two were due to excessive speed and the other two involved the drivers' inability to negotiate the curve. Based on the infrequency of collisions at the site, JDA believed "the installation of advanced warning signs additional to the already posted leftward chevron warning signs at the collision site/leftward curve was not warranted by the motor vehicle crash history."

A-5185-18T3

JDA also noted that, based on the CDR, Bhatt was traveling at forty-eight miles per hour "prior to his initiation of evasive action along the curve." In concluding its report, JDA stated that Bhatt's "excessive travel speed was the most significant contributing factor for this single vehicle collision." Moreover, according to JDA, it was "apparent from the CDR data that . . . Bhatt did not apply the brakes until he was near or at the apex of the leftward curve in the roadway."

In a responsive, supplemental report, Meth addressed JDA's contention about the inapplicability of the MUTCD to Clinton Road. In response, he stated that somewhere along Clinton Road he believed that the road could have met the 1000 vehicle per day standard because it served as a feeder road connecting two major roadways.

After discovery concluded, on November 2, 2018, defendant filed its motion for summary judgment. Plaintiff filed opposition and the motion judge heard oral argument on December 10, 2018. On December 18, 2018, the judge granted summary judgment to defendant and placed his decision on the record that day.

In his oral decision, the judge stated that plaintiff's "only claim [was] that the defendant . . . failed to install proper warning signs" near the curve on

Clinton Road. According to the judge, N.J.S.A. 59:4-5, "specifically and unambiguously prohibits the [c]ourt from finding liability for injuries arising out of the public entity or public employees' failure to provide ordinary traffic signals, signs, markings, or other similar devices." Moreover, the judge noted that such immunity "applied whether or not the public entity itself created the condition necessitating the traffic signal or sign."

As for the speed limit at the accident site, citing N.J.S.A. 39:4-98 and Kolitch v. Lindedahl, 100 N.J. 485 (1985), the motion judge added that "[t]he s[et]ting of the speed limit in the first instance is a discretionary function. The lawful limits of speed are simply those that are posted. The onus is on the driver to drive at an appropriate reduced speed when approaching and going around a curve." Noting that the speed limit at the curve was thirty-five miles per hour, the judge stated:

> The onus of reducing speed to some appropriate level, when approaching a curve such as the one at Clinton Road is on the driver. The Township cannot be subjected to liability for the posting of a sign, so long as the sign itself does not misinform the public with regard to the actual lawful limit as permitted by statute. Here, not only was a speed limit posted, but Bhatt was aware of the speed limit in the road being [thirty-five] miles per hour. There were also warning signs.

Finally, to the extent that plaintiff argued defendant failed to enforce the thirty-five-miles-per-hour speed limit, N.J.S.A. 59:2-4 "fully immunized public entities for claims for failing to either adopt or enforce any law." This appeal followed.

We review summary judgment decisions de novo using the same standard governing the motion court's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, shows that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38). If there are no genuine issues of fact, we then decide whether the trial court's ruling on the law was correct. RSI Bank, 234 N.J. at 472.

The trial court's interpretation and application of the TCA to undisputed facts is a legal determination that we review de novo. See Jones v. Morey's Pier, Inc., 230 N.J. 142, 153 (2017); Parsons v. Mullica Twp. Bd. of Ed., 440 N.J. Super. 79, 83 (App. Div. 2015) ("[O]ur review of the meaning of a statute is de novo, and we owe no deference to the interpretative conclusions reached by the

trial court . . . ." (quoting <u>Wilson ex rel. Manzano v. City of Jersey City</u>, 209 N.J. 558, 564 (2012))).

The TCA governs when public entities are liable for a tort. <u>Ben Elazar v. Macrietta Cleaners, Inc.</u>, 230 N.J. 123, 133 (2017).

> The [TCA] modifies the doctrine of sovereign immunity and sets forth the parameters within which an aggrieved party may recover for the tortious acts of public entities . . . . The Act's guiding principle is that immunity from tort liability is the general rule and liability is the exception . . . . [T]he Act imposes strict requirements upon litigants seeking to file claims against public entities.
>
> [<u>O'Donnell v. N.J. Tpk. Auth.</u>, 236 N.J. 335, 344–45 (2019) (citations omitted) (internal quotation marks omitted).]

"[A] public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." <u>Polzo v. Cnty. of Essex</u>, 209 N.J. 51, 65 (2012) (quoting <u>Kahrar v. Borough of Wallington</u>, 171 N.J. 3, 10 (2002)).

Applying the TCA's guiding principles and our de novo standard of review to the granting of summary judgment, we first address plaintiff's argument that her claims are not barred by N.J.S.A. 59:4-5 because the failure to install a curve-warning sign and an advisory speed plaque, as allegedly required under the MUTCD, was a ministerial act, not a discretionary one. Specifically,

11

plaintiff argues that defendant created a dangerous condition by incorrectly "installing a chevron or two without the other signage required to be installed in conjunction therewith, including a curve warning sign and an advisory speed plaque." For that reason, plaintiff argues that her claims are permitted by N.J.S.A. 59:4-4, which imposes liability on a public entity "for injur[ies] proximately caused by its failure to provide . . . signs, . . . if . . . necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care." We disagree.

We conclude that the motion judge correctly applied the immunity found in N.J.S.A. 59:4-5, which "simply specifies one particular type of discretionary activity to which immunity attaches." Patrick by Lint v. City of Elizabeth, 449 N.J. Super. 565, 575 (App. Div. 2017) (quoting Aebi v. Monmouth Cnty. Highway Dep't, 148 N.J. Super. 430, 433 (App. Div. 1977)) (holding that the "failure to place a sign in a school zone should [not] be analyzed solely [as a] dangerous condition" and applying the immunity under N.J.S.A. 59:4-5); see also Weiss v. N.J. Transit, 128 N.J. 376, 385 (1992) ("When the absence of a traffic signal . . . is the true culprit, government is immune."). That portion of the TCA states that "[n]either a public entity nor a public employee is liable

under this chapter for an injury caused by the failure to provide ordinary traffic signals, signs, markings or other similar devices." N.J.S.A. 59:4-5.

"[T]he determination as to the advisability or necessity of a particular sign or warning device at any particular place requires the exercise of discretion." Patrick by Lint, 449 N.J. Super. at 575. A "discretionary act . . . calls for the exercise of personal deliberations and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Kolitch, 100 N.J. at 495 (quoting Miree v. United States, 490 F. Supp. 768, 774 (N.D. Ga. 1980)).

Here, as the motion judge found, defendant's decision to install one type of traffic control sign over another was immune from plaintiff's claim because "the posting of [or failure to post] a sign is merely one form of acting on the decision to set a certain limit, a decision that is discretionary in nature and therefore entitled to immunity." Kolitch, 100 N.J. at 496. "A public entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity." Patrick by Lint, 449 N.J. Super. at 574 n.4 (quoting N.J.S.A. 59:2-3(a)).

Moreover, as the motion judge also correctly determined, where a public entity has set a speed limit, "it cannot be a tort to communicate accurately a

properly established speed limit" and that "the setting of the speed limit in the first instance is a discretionary function." Kolitch, 100 N.J. at 494. The "'lawful' limits of speed are simply those that are posted, namely, those limits above which a motorist using our roadways will be held to be in violation of the traffic regulations." Id. at 495. A public entity "cannot be subjected to liability for the posting of a sign so long as the sign itself does not misinform the public with regard to the actual, lawful limit" of speed. Ibid.

Nonetheless, under N.J.S.A. 59:4-4, a public entity may be liable for not installing appropriate warnings where a dangerous condition requires them or, if installed, they are not maintained. See Wymbs ex rel. Wymbs v. Twp. of Wayne, 163 N.J. 523, 539 (2000) (holding immunity did not apply because plaintiffs were not asserting the absence or inappropriateness of a sign as a basis to impose liability, but were contending instead that the prior signs represent admissions by the State that the curve is a dangerous condition); Civalier by Civalier v. Est. of Trancucci, 138 N.J. 52, 64 (1994) (allowing recovery to plaintiffs injured by a truck driver's reliance on there being no stop sign at an intersection, where one had been previously installed). Once an entity determines the need for a traffic control device or sign, it will be held liable for

any dangerous condition created by its failure to maintain the device or sign. Shuttleworth v. Conti Constr. Co., 193 N.J. Super. 469 (App. Div. 1984).

A curve in a road does not by its mere existence create a dangerous condition. See N.J.S.A. 59:4-1(a) (defining a "dangerous condition" as a "condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used."); Patrick by Lint, 449 N.J. Super. at 572 (finding that lack of signage, without more, was insufficient to create a dangerous condition). "The onus of reducing speed to some appropriate level when approaching a curve . . . is on the driver." Kolitch, 100 N.J at 495. That "onus" is reinforced by New Jersey's Motor Vehicle laws. N.J.S.A. 39:4-98 states, "[t]he driver of every vehicle shall . . . drive at an appropriate reduced speed . . . when approaching and going around a curve."

Here, there was no dispute that Bhatt never reduced his speed—and in fact was speeding—when he entered Clinton Road's curve, about which there were advanced warning signs in place. Significantly, Bhatt's excessive speed alone was sufficient to bar application of N.J.S.A. 59:4-4 as argued by plaintiff because liability under that statute is limited to those who are injured while "exercising due care."

We reject plaintiff's contention that the motion judge should have further analyzed her claim that the failure to post advisory speed reduction signs created a dangerous condition under N.J.S.A. 59:4-2, which defines when a public entity can be liable for a dangerous condition on public property. In order to circumvent immunity, N.J.S.A. 59:4-2 requires that a plaintiff demonstrate that (1) a dangerous condition existed on the property at the time of the injury; (2) the dangerous condition proximately caused the injury; (3) the dangerous condition created a reasonably foreseeable risk of the kind of injury that occurred; (4) the public entity had actual or constructive notice of the condition in sufficient time prior to the injury to correct the dangerous condition; and (5) the action or inaction taken by the public entity to protect against the dangerous condition was palpably unreasonable. See N.J.S.A. 59:4-2; Polzo, 209 N.J. at 65–66 (first quoting N.J.S.A. 59:4-2; then citing Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 124–25 (2001)); Muhammad v. N.J. Transit, 176 N.J. 185, 194 (2003) (quoting N.J.S.A. 59:4-2).

Here, even if the township was not entitled to immunity under N.J.S.A. 59:4-5, plaintiff failed to submit evidence that defendant received complaints or show a history of accidents at the site sufficient to place defendant on actual or constructive notice of an issue, see N.J.S.A. 59:4-3(a) and (b), or any

demonstration that the failure to install additional warnings was palpably unreasonable.  See Patrick by Lint, 449 N.J. Super. at 573–74.

We find no merit to plaintiff's argument that defendant had actual notice of a dangerous condition—the lack of appropriate signage for the curve—simply because a police crash report database referred to the Clinton Road curve as a "bad curve."  Plaintiff's reliance on that statement ignores its context.  Other than indicating that Clinton Road has several "bad curves," Officer Novakowski, who also offered that description, testified that Bhatt's speed was a contributing factor to his swerving off the side of the road.  She also testified that "most" accidents on Clinton Road are the result of the driver traveling at a speed greater than thirty-five miles per hour.

The officer's statement and the accident database characterization at most established that prior accidents occurred because drivers did not drive at or less than the speed limit—not that the curve or lack of signage was dangerous even when drivers exercised due care.  Moreover, given the infrequent crash history at the particular location, with only four collisions since 2004, defendant could not have had actual knowledge of the danger that inappropriate signage might have caused.  See N.J.S.A. 59:4-3(a).

Plaintiff's expert never cited to any specific information that established the contributing causes for these crashes and simply concluded that the collisions were the result of defendant's failure to place appropriate signage before the curve. Defendant's expert, who reviewed collision reports provided by defendant's police department, stated that of the four collisions that occurred between 2004 and 2017 at the same location, two of the four were related to the vehicle's speed at the time of the accident, one was caused by driver inattention, and the last was caused by debris on the roadway. Given the crash history at the approximate site, and the unrefuted reasons for those crashes indicating they were largely the result of lack of due care, there was no factual dispute about whether defendant had constructive notice that a failure to place advisory speed reduction signs, in addition to the already present chevrons, created a dangerous condition.

There was similarly no evidence that defendant's installation of one type of sign over another was palpably unreasonable. "[P]alpably unreasonable implies behavior that is patently unacceptable under any circumstance and that . . . must be manifest and obvious that no prudent person would approve of its course of action or inaction." Patrick by Lint, 449 N.J. Super. at 573 (alteration and

omission in original) (quoting Holloway v. State, 125 N.J. 386, 403–04 (1991)). See also Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 459 (2009).

Here, defendant's installation of warning chevrons about the curve and its failure to install the allegedly required speed reduction signage was not palpably unreasonable, and its decision was supported by the limited accident history of the site. The evidence simply did not support a finding that it was "obvious that no prudent person would approve of [defendant's] course of action or inaction." Ogborne, 197 N.J. at 459.

Under these circumstances, we have no cause to disturb the outcome of defendant's summary judgment motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5185-18T3