963 A.2d 828

SUZANNE K. OGBORNE, PLAINTIFF–APPELLANT AND CROSS–RESPONDENT, v. MERCER CEMETERY CORPORATION AND JOHN DOES 1–10 (PERSONS RESPONSIBLE FOR THE OWNERSHIP, MAINTENANCE AND CONTROL OF SAID PREMISES WHERE PLAINTIFF FELL AND SUSTAINED INJURIES), DEFENDANTS, AND CITY OF TRENTON, DEFENDANT–RESPONDENT AND CROSS–APPELLANT.

Argued October 6, 2008—Decided January 29, 2009.

450

*Ronald B. Grayzel* argued the cause for appellant and cross-respondent (*Levinson Axelrod*, attorneys).

*Ruby Denise Lyles*, City Attorney, argued the cause for respondent and cross-appellant (*Ms. Lyles*, attorney; *Peter J. Cohen*, Assistant City Attorney, on the briefs).

Justice WALLACE, JR. delivered the opinion of the Court.

In this appeal, we must decide whether, under the Tort Claims Act (Act), *N.J.S.A.* 59:1–1 to 12–3, the conduct of a public entity and its employee should be governed by the general rule of vicarious liability set forth in *N.J.S.A.* 59:2–2, or under public entity liability with regard to the dangerous condition of public property set forth in *N.J.S.A.* 59:4–2. Plaintiff was trapped inside the Mercer Cemetery Park (Park) after an unidentified City employee locked the gates several hours before the Park was scheduled to close. Finding no other means of egress, plaintiff climbed atop a lower part of the brick wall surrounding the Park and dropped to the ground outside the walls. In doing so, she fractured her right tibia.

The trial court found that the public entity was vicariously negligent as a matter of law for the conduct of a public employee acting within the scope of employment, but that a jury must decide the issues of proximate cause and comparative negligence. A jury returned a verdict in favor of plaintiff and awarded her $1,640,000 in damages. On appeal, the Appellate Division held that the trial court should have applied *N.J.S.A.* 59:4–2 because plaintiff's injuries were allegedly caused by the dangerous condition of the property after the employee's actions had ceased. The panel remanded for a new trial on liability only, determining that the damages award was separate and distinct from the liability issues. We granted plaintiff's petition for certification raising the liability issues and defendant's cross-petition related to the damages issue. We now affirm the judgment of the Appellate Division and remand for a new trial for the court to apply the liability standards under *N.J.S.A.* 59:4–2.

## I.

The essential facts are not disputed. On November 26, 2001, plaintiff decided to take a lunchtime walk through the Park, which is bordered by South Clinton Avenue, Raoul Wallenberg Avenue, and Magowan Street. It is surrounded by numerous government office buildings, and there are bus stops near the front entrance on South Clinton Avenue. The Park contains walking paths, benches, and picnic areas for the public. It has two wrought iron gates that are used as public entrances, and it is entirely enclosed, partially by a wrought iron picket fence approximately five or six feet in height and partially by a brick wall that ranges in height from three to five feet measured from inside.

The City of Trenton's Department of Recreation, Natural Resources, and Culture (City) is responsible for opening and closing the gates to the Park. On weekdays, the gates are unlocked around 7:30 a.m. and locked around 4:30 p.m. Prior to locking the gates, an employee of the City is required to check the interior of the Park to make sure no one is inside. The employees responsible for locking and unlocking the gates are the only persons who possess the keys to the locks.

Plaintiff, who was thirty-five years old at the time, walked leisurely through the Park for about thirty minutes. When plaintiff attempted to leave, she noticed that the front gate was locked. Plaintiff did not see any pedestrians on South Clinton Avenue when she approached that gate. She then walked to the rear gate to see if it was open, but that gate was also locked. She did not have a cellular telephone and did not feel comfortable yelling for assistance because she might draw attention to the fact that she was trapped. Plaintiff feared that someone might attempt to take advantage of her precarious position. She walked around the perimeter of the Park twice, hoping to discover a means of egress or, at least, someone who could provide assistance, but she was unsuccessful.

Finally, plaintiff decided to scale a three-foot section of the brick wall to escape the Park. From a seated position on top of

the wall, plaintiff dropped six to seven feet to the ground below. She landed awkwardly and fractured her right tibia. She could not move and remained on the ground for approximately thirty minutes until a passerby noticed her and summoned help. A short while later, emergency medical personnel arrived in an ambulance and transported plaintiff to a nearby hospital. Tests revealed that plaintiff suffered a comminuted segmental fracture of her right tibia-the bone was broken into three pieces. She was placed in a long-leg posterior splint, given crutches and pain medication, and discharged with orders to follow up with an orthopedist.

Plaintiff visited Dr. Gregg R. Foos, an orthopedic surgeon, who recommended surgical repair. Three days after the accident, on November 29, 2001, plaintiff underwent orthopedic surgery. A rod and screws were inserted into her leg to facilitate proper healing. Plaintiff remained in the hospital for five days.

Plaintiff was out of work for three months. During the healing process, she received physical therapy, x-rays, follow-up doctor visits, medication to treat her pain, and medication to treat a pulmonary embolism that she developed as a result of the injury and/or the treatment of her injury. She required the assistance of a wheelchair, crutches, a walker, or a cane to get around.

Plaintiff filed a complaint against the City and the Mercer Cemetery Corporation in May 2003, alleging that defendants negligently maintained the Park, causing her to fall and suffer permanent injury. Following discovery, plaintiff moved for partial summary judgment. The trial court granted plaintiff summary judgment, finding that the City was negligent and that plaintiff's injuries met the Act's threshold to recover pain and suffering damages as a matter of law, but held that the issues of proximate cause and comparative fault must be decided by a jury.

The City moved for reconsideration, contending that plaintiff's cause of action should be governed by *N.J.S.A.* 59:4-2, which holds public entities liable for injuries caused by "dangerous conditions" on public property and requires a finding that defendant acted in a

"palpably unreasonable" manner. The trial court denied the motion. The City sought leave to appeal and a stay of the trial. After the trial court denied the motion for stay, the City withdrew its motion for leave to appeal, and the trial proceeded.

Plaintiff testified, described what happened, outlined her injuries, and indicated that when she returned to work she had to use a cane. She complained that she continued to experience a loss of strength in her right leg, weather-related aches and swelling, numbness in her foot and leg, and an inability to participate in certain physical activities that she previously enjoyed, such as yoga and swimming. Her life expectancy was forty-one years from the date of the accident.

Plaintiff's medical expert opined that plaintiff's injuries were permanent in nature. The expert also asserted that plaintiff's medical history, which included a pulmonary embolism, could complicate any future surgery she elects to undergo. Although defendant's medical expert opined that plaintiff could have the rod and screws surgically removed from her leg, he did not recommend that course of action.

The jury returned a verdict in favor of plaintiff and awarded her damages in the amount of $1,640,000. The City did not file any post-trial motions, but it did file an appeal.

In an unpublished opinion, the Appellate Division affirmed in part, reversed in part, and remanded for a new trial on liability. The panel found that the trial court erred by applying the ordinary negligence standard pursuant to *N.J.S.A.* 59:2–2 and remanded for the application of the more stringent "palpably unreasonable" standard pursuant to *N.J.S.A.* 59:4–2 because plaintiff's cause of action implicated a "dangerous condition" of property liability. In remanding for a new trial, the panel held that the parties must resubmit proofs of proximate cause and comparative fault because those issues are not "distinct and severable" from the application of the "palpably unreasonable" standard. However, the panel concluded that the damages award need not be retried because the damages issue was severable from the liability

issue. The panel noted that the damage award of $1,640,000 was "high," but "reasonably supported by the evidence relating to the severity and permanence of plaintiff's injuries, combined with plaintiff's long life expectancy."

We granted plaintiff's petition for certification and the City's cross-petition for certification. 192 *N.J.* 599, 934 *A.*2d 641 (2007).

## II.

Plaintiff contends that the ordinary negligence standard applies rather than the more stringent "palpably unreasonable" standard of *N.J.S.A.* 59:4–2, which governs when the issue concerns the physical condition of public property. She urges that the negligent act of the public employee in failing to discover her presence in the Park before locking the gates caused her injury, not the physical condition of the Park property. Additionally, plaintiff asserts that even if a new trial is required, the Appellate Division correctly upheld the damages verdict, but erred in ordering reconsideration of proximate cause and comparative fault because the jurors fairly decided those two issues.

The City counters that the appropriate standard is whether the City employee who allegedly locked the Park gates created a dangerous condition of public property that contributed to plaintiff's injury, necessitating the application of *N.J.S.A.* 59:4–2. The City argues that the facts demonstrate that plaintiff was not injured by the "actions of a City employee" closing the gates, but rather by the static condition of the Park after the employee's action ceased. The City agrees with the Appellate Division's conclusion that proximate cause and comparative fault are inextricably tied to the application of *N.J.S.A.* 59:4–2 and must be retried on remand, but urges that the damages issue should also be retried because it is not fairly separable from the liability issues. The City adds that even though it failed to move for remittitur, the Appellate Division should not have weighed the viability of the damages verdict against the "shocks-the-conscience" standard.

## III.

In this case, we must determine whether to apply the Act's ordinary negligence standard, *N.J.S.A.* 59:2–2, or its "palpably unreasonable" standard, *N.J.S.A.* 59:4–2, to the City's conduct. Before turning to that troublesome issue, we restate some general principles under the Act.

■ On several occasions, we reviewed the history of the Act. *See Velez v. City of Jersey City,* 180 *N.J.* 284, 289–91, 850 *A.*2d 1238 (2004). The Act re-establishes sovereign immunity and provides that "public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established" in the Act. *N.J.S.A.* 59:1–2; *Smith v. Fireworks by Girone,* 180 *N.J.* 199, 207, 850 *A.*2d 456 (2004) (noting "dominant theme of the [Act] was to reestablish the immunity of all governmental bodies in New Jersey, subject only to the [Act's] specific liability provisions"). This Court reiterated in *Coyne v. State, Dep't of Transp.* that "[t]he guiding principle of the [Act] is that 'immunity from tort liability is the general rule and liability is the exception.'" 182 *N.J.* 481, 488, 867 *A.*2d 1159 (2005).

This appeal does not present us with a clash between a liability provision and an immunity provision of the Act, but rather a clash between two liability provisions. *N.J.S.A.* 59:2–2 governs a plaintiff's cause of action when it turns on whether a public employee was ordinarily negligent in undertaking the action that caused the plaintiff's injury. *N.J.S.A.* 59:2–2 provides:

a. A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances.

b. A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.

That is, "when the public employee is liable for acts within the scope of that employee's employment, so too is the entity." *Tice v. Cramer,* 133 *N.J.* 347, 355, 627 *A.*2d 1090 (1993). Although a public entity is generally immunized from suits based on discre-

458

tionary acts, the public entity may be liable for "negligence arising out of acts or omissions of its employees in carrying out their ministerial functions." *N.J.S.A.* 59:2–3.

■ The competing liability provision is *N.J.S.A.* 59:4–2, which states that a public entity will only be liable for injuries resulting from a dangerous condition of property created by an employee's negligence if the entity acted in a palpably unreasonable manner in failing to protect against the condition. That section provides:

A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

b. a public entity had actual or constructive notice of the dangerous condition under section 59:4–3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

[*N.J.S.A.* 59:4–2.]

A "dangerous condition" is defined in the Act as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." *N.J.S.A.* 59:4–1(a). We have noted that a "substantial risk" is " 'one that is not minor, trivial or insignificant.' " *Kolitch v. Lindedahl,* 100 *N.J.* 485, 493, 497 *A.*2d 183 (1985). "Public property" is defined in pertinent part as "real or personal property owned or controlled by the public entity." *N.J.S.A.* 59:4–1(c). The Act does not define the term "condition of property."

■ Although the "palpably unreasonable" standard also is not defined by the Act, this Court has defined it in the following manner:

For today's purposes we accept what was stated in *Williams v. Phillipsburg,* 171 *N.J.Super.* 278, 286, 408 *A.*2d 827 (App.Div.1979), in which the court differentiated the term "palpably unreasonable" from ordinary negligence:

> We have no doubt that the duty of ordinary care, the breach of which is termed negligence, differs in degree from the duty to refrain from palpably unreasonable conduct. The latter standard implies a more obvious and manifest breach of duty and imposes a more onerous burden on the plaintiff.

We conclude that the term implies behavior that is patently unacceptable under any given circumstance.... [F]or a public entity to have acted or failed to act in a manner that is palpably unreasonable, it must be manifest and obvious that no prudent person would approve of its course of action or inaction.

[*Kolitch, supra,* 100 *N.J.* at 493, 497 *A.*2d 183 (quotations omitted); *see also Muhammad v. N.J. Transit,* 176 *N.J.* 185, 195–96, 821 *A.*2d 1148 (2003); *Holloway v. State,* 125 *N.J.* 386, 403–04, 593 *A.*2d 716 (1991).]

In the present case, this Court must determine whether the ordinary negligence standard of *N.J.S.A.* 59:2–2 must give way to the more stringent "palpably unreasonable" standard of *N.J.S.A.* 59:4–2 when a public employee's negligent conduct causes a plaintiff to come into contact with a condition of property that causes his or her injury. In light of the Act's silence on the issue, we look to the underlying legislative intent. *See Liberty Mut. Ins. Co. v. Land,* 186 *N.J.* 163, 171, 892 *A.*2d 1240 (2006) (" 'When a statute is silent or ambiguous ... the Court must interpret the statute in light of the Legislature's intent.' " (quoting *Burns v. Belafsky,* 166 *N.J.* 466, 473, 766 *A.*2d 1095 (2001))). The Legislature provided broad immunity protection for public entities because "the area within which the government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done." *N.J.S.A.* 59:1–2. Thus, it is obvious that the Legislature intended public entities to receive broad immunity protection under the Act. As a result, this Court has held that an immunity provision of the Act will trump an applicable liability provision. *See, e.g., Pico v. State,* 116 *N.J.* 55, 62–63, 560 *A.*2d 1193 (1989).

That same principle guides the result here. Consistent with the Legislature's purpose of providing broad immunity under the Act, we believe that the Legislature also intended a broad reading of the dangerous condition of public property provisions of *N.J.S.A.*

59:4–2, with its higher standard for imposition of liability. That statute "immunizes a public entity from liability for a dangerous condition when its negligence 'was not palpably unreasonable.'" *Pico, supra,* 116 *N.J.* at 63, 560 *A.*2d 1193. Therefore, when the facts are reasonably debatable that a public employee's act or failure to act created a dangerous condition of property, and that condition of property causes an injury, the higher standard of palpably unreasonable conduct in *N.J.S.A.* 59:4–2 operates to trump the ordinary negligence standard, which otherwise applies when the act of a public employee causes an injury.

Our construction of the Act is consistent with the view we expressed in *Pico, supra,* 116 *N.J.* 55, 560 *A.*2d 1193. In that case, an ice storm caused icy conditions on Route 23 in Wayne. *Id.* at 57, 560 *A.*2d 1193. The condition was reported to a Department of Transportation maintenance foreman. *Id.* at 57–58, 560 *A.*2d 1193. Several hours later, the plaintiff skidded on a patch of ice, regained control, parked her car, walked away, and was struck by another vehicle. *Id.* at 58, 560 *A.*2d 1193. The plaintiff sued various public entities, and the State raised weather immunity under *N.J.S.A.* 59:4–7. *Ibid.* The Law Division granted the State's motion, but the Appellate Division, after agreeing that the weather immunity provision precluded liability under *N.J.S.A.* 59:4–2 for dangerous conditions, reversed and concluded that the State might be liable for the employee's negligence under *N.J.S.A.* 59:2–2(a). *Ibid.* This Court held that the weather immunity provision trumped plaintiff's claim predicated on ordinary negligence, but "even if the weather immunity did not apply, plaintiff's claim should have been evaluated not by the standard of ordinary negligence, ... but by the standard of palpably unreasonable conduct of *N.J.S.A.* 59:4–2." *Id.* at 63, 560 *A.*2d 1193. Thus, the Court expressed that when the negligent activities of an employee involve the creation of a dangerous condition of public property, the vicarious liability provisions of *N.J.S.A.* 59:2–2 must give way to the more exacting standards of *N.J.S.A.* 59:4–2.

We turn now to apply the above principles to the present case. It is obvious that if plaintiff had not been in the Park, the employee's conduct in locking the gates would not have created a dangerous condition of property. It was the combination of plaintiff being in the Park and the City's employee locking the gates that rendered the Park potentially dangerous to plaintiff. Under those conditions, it is reasonably debatable that the locking of the gates rendered the Park a dangerous condition because plaintiff was unable to walk out in the same manner that she entered the Park. Consequently, we agree with the Appellate Division that the proper legal standard for judging plaintiff's claim against the City should have been the combined dangerous condition of public property and "palpably unreasonable" standard pursuant to *N.J.S.A.* 59:4–2, and not the ordinary negligence standard in *N.J.S.A.* 59:2–2.

Plaintiff also urges that it was error to remand the issues of proximate cause and comparative negligence. We disagree. In *Conklin v. Hannoch Weisman*, we declared that "in a civil tort claim ... [n]egligence ... is usually inextricably intertwined with the concept of proximate cause." 145 *N.J.* 395, 410, 678 *A.*2d 1060 (1996). And, in *Ahn v. Kim*, a case decided the same day as *Conklin*, we emphasized "the general rule that issues in negligence cases should be retried together unless the issue unaffected by error is entirely distinct and separable from the other issues." 145 *N.J.* 423, 434, 678 *A.*2d 1073 (1996); *see Lewis v. Am. Cyanamid Co.*, 155 *N.J.* 544, 561, 715 *A.*2d 967 (1998) (noting that "[b]ecause the issues of plaintiff's comparative negligence and defendants' liability intertwine, it would be inappropriate to remand one without the other"). We are in accord with the Appellate Division's conclusion that the issues of proximate cause and comparative negligence must be retried because "[i]ssues concerning the dangerous condition of the property and whether the City acted in a palpably unreasonable manner are intertwined with the issues of causation and foreseeability."

We affirm the judgment of the Appellate Division that the case should have been tried under *N.J.S.A.* 59:4–2, and that the issues of proximate cause and comparative negligence must be retried.

## IV.

The City argues that the decision below conflicts with *Fertile v. St. Michael's Med. Ctr.,* 169 *N.J.* 481, 779 *A.*2d 1078 (2001), and that it could not have achieved justice by pursuing a remittitur remedy because "application of the wrong legal standards negated the possibility of a fair trial on liability and damages."

Initially, we note that the City did not move for a new trial based on the weight of the evidence. *R.* 4:49–1. Absent a new trial motion on that ground, the claim that the damages verdict was against the weight of the evidence is not cognizable on appeal. *R.* 2:10–1.

Even if we were to find justifiable reason to disregard that rule, we find no necessity to order a new trial on damages. The City does not claim any error in the charge to the jury on damages, but rather urges the Court to follow the general rule that when a trial error that affects liability occurs, the new trial shall encompass all issues. *Fertile, supra,* 169 *N.J.* at 490–91, 779 *A.*2d 1078.

However, "[t]he scope of the new trial depends on the nature of the injustice." *Id.* at 490, 779 *A.*2d 1078. When the damages award is not tainted by the error in the liability portion of the case and is fairly separable, retrial need not include the issue of damages. *Lewis, supra,* 155 *N.J.* at 563, 715 *A.*2d 967 (noting that remand on liability and comparative negligence "should not include the issue of damages"); *see also Martin v. Prime Hospitality Corp.,* 345 *N.J.Super.* 278, 293, 785 *A.*2d 16 (App.Div.2001) (stating that failure to apportion responsibility did not affect damages award); *Weiss v. Goldfarb,* 295 *N.J.Super.* 212, 228, 684 *A.*2d 994 (App.Div.1996) (noting that liability issues and damages issues are "fairly separable" so no reason to retry

damages), *rev'd on other grounds*, 154 *N.J.* 468, 713 *A.*2d 427 (1998).

 Recently, we explained that

[o]ur role in assessing a jury verdict for excessiveness is to assure that compensatory damages awarded to plaintiff encompass no more than the amount that will make the plaintiff whole, that is, the actual loss. Although the judicial role in reviewing jury verdicts ... is essential to a rational system of justice, the authority to set aside damages awards on grounds of excessiveness is limited. Verdicts should be upset for excessiveness only in clear cases. It is only upon the predicate of a determination that there has been a manifest miscarriage of justice, that corrective judicial action is warranted.

[*Jastram v. Kruse*, 197 *N.J.* 216, 228, 962 *A.*2d 503 (2008) (quotations, citations, and alterations omitted).]

Simply stated, "the evaluation of damages is a matter uniquely reposed in the jury's good judgment and to justify judicial interference, the verdict must be wide of the mark and pervaded by a sense of wrongness." *Id.* at 229, 962 *A.*2d 503 (quotations and alteration omitted).

In applying those principles here, we agree with the assessment of the Appellate Division that although the damages award was high, it was "reasonably supported by the evidence relating to the severity and permanence of plaintiff's injuries, combined with plaintiff's long life expectancy ... and the inherently subjective nature of pain and suffering damages." Consequently, we find no need to retry the damages issue.

## V.

The judgment of the Appellate Division remanding for a new trial to assess liability and related issues under *N.J.S.A.* 59:4–2, without the necessity of a new trial on damages, is affirmed.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.