**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1560-19

DAVID BONANATA,

    Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
DEPARTMENT OF
CORRECTIONS, DEREK
SLIMMER, WAYNE A. SHAW,
and WALTER W. HUGHES, JR.,

    Defendants-Respondents.

_____

Submitted February 9, 2021 – Decided June 11, 2021

Before Judges Moynihan and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0874-16.

Barry, Corrado, Grassi & Gillin-Schwartz, PC, attorneys for appellant (Oliver T. Barry, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondents (Sookie Bae-Park, Assistant Attorney

General, of counsel; Ashley L. Costello, Deputy
Attorney General, on the brief).

PER CURIAM

Plaintiff appeals from an order granting defendants' summary-judgment motion, arguing the motion judge's consideration of his dangerous-condition claim under N.J.S.A. 59:4-2 of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 (the TCA), was improperly narrow. We agree and reverse.

While incarcerated, plaintiff was assigned to a groundskeeping-work detail, which involved grass cutting and general lawn maintenance. Defendant corrections officer Derek Slimmer was the outside detail sergeant overseeing the grounds details. Defendant corrections officers Wayne A. Shaw and Walter W. Hughes, Jr., worked together supervising inmates on grounds details. Generally, Hughes would work with inmates assigned to "bigger sections" and Shaw would follow behind with inmates using push mowers, "doing things that the scag and the big tractor couldn't get to." The "scag" was a Husqvarna-brand, self-propelled commercial mower, which had a one-wheeled platform, known as a "sulky," on which the operator would stand while mowing.

On May 20, 2015, plaintiff was assigned to use the Husqvarna mower, which he had been operating for a couple of weeks, to mow grass located between a road and a wooded area. Defendant corrections officers were aware

A-1560-19

of the risks of mowing grass along the tree line.  Hughes testified "[w]e always tell them be careful [when mowing along the tree line] due to the fact of possible stumps or things of those nature."  Slimmer testified "right along the woods . . . there are stumps out there."  According to defendant Shaw, telling plaintiff to "use the scag in that area" would have been wrong because it was not safe to "use a scag when there's stumps or debris in an area."  Defendant Shaw testified he previously had told plaintiff "not to ride along the woods . . . [b]ecause the push mowers are supposed to cut along the woods."

Directly contradicting Shaw's testimony, plaintiff testified defendant Shaw had told him he had to cut near the woods.  Plaintiff also testified he had told an officer on his detail he did not want to operate the Husqvarna mower because

> they kept telling me to cut close to the woods, and I kept telling them that there's too many roots and stuff . . . and that machine should cut towards the road, and the guys with the push mowers should cut the woods, but . . . you have to do whatever they tell you, you can't tell them no.

While he was operating the Husqvarna mower somewhere between the road and the wooded area, plaintiff hit "a root or a stump" and fell off the sulky; the mower came down on top of plaintiff's foot and the blades struck his left ankle.  According to plaintiff, he was operating the Husqvarna mower six feet

3

from the tree line.  According to Hughes, who witnessed the accident, plaintiff was "cutting along the edge of the woods line."  When asked if plaintiff was "cutting where he shouldn't have been cutting," Hughes responded, "[h]e was right on the borderline."  Shaw testified, "[t]hat day I guess he wasn't under supervision, and he went along the woods."

In the first count of his first amended complaint, plaintiff alleged one or more of defendants were negligent in ordering him to operate the Husqvarna mower in an area defendants knew to be unsafe for the operation of that mower and in failing to supervise or train him.  In the second count plaintiff asserted the area where he was injured "constituted a dangerous condition of property in that it was rife with obstructions, such as branches, stumps, and rocks, that made it unsafe for the operation of riding commercial mowing equipment"; defendants had actual or constructive knowledge of the "obstructions and the risks they posed" to a Husqvarna mower operator; and ordering the use of a Husqvarna mower in that area was "palpably unreasonable."[1]

---

[1]  In the third count, plaintiff alleged the Department was strictly liable "based on the design, manufacture, and/or provision of the 'Sulky' device at issue in that it was not reasonably fit, suitable, or safe for its intended purpose."  Plaintiff's counsel conceded "it's not a product[]s case" during oral argument on defendants' summary-judgment motion.

A-1560-19

After the completion of discovery, defendants moved for summary judgment, asserting they were protected by immunities under N.J.S.A. 59:2-3(d) (discretionary use of resources), 59:2-6 (failure to inspect), and 59:3-3 (good-faith law enforcement) and arguing plaintiff had failed to state a claim for dangerous-condition liability under N.J.S.A. 59:4-2. Granting defendants' motion in an oral decision, the motion judge characterized the case as involving an allegation the State "should have done more to find or make itself aware of a potential hazard to the inmates who would be cutting grass there" and concluded the failure-to-inspect immunity under N.J.S.A. 59:2-6 applied.[2] Limiting its consideration of a dangerous condition to the existence of a stump and declining to consider the actions of the corrections officers in creating or contributing to the dangerous condition, the motion judge also held plaintiff had failed to prove the first, fourth, and fifth prongs of a dangerous-condition claim under N.J.S.A. 59:4-2. The motion judge based that holding on her findings: "a stump located in the woods does not create a substantial risk to all people using the property with due care in a matter in which it is reasonably foreseeable that the property would be used"; plaintiff had presented "no evidence that any employee of the

_____

[2] The trial court found the discretionary-use-of-resources immunity of N.J.S.A. 59:2-3(d) did not apply and did not decide conclusively whether the good-faith law enforcement immunity of N.J.S.A. 59:3-3 applied.

state was aware of the stump . . . that allegedly caused harm to the plaintiff";
and "a reasonable jury could not find that the State's actions in directing the
plaintiff to use the mower in the location where [it] was used was palpably
unreasonable."

On appeal, plaintiff argues the court erred in applying the failure-to-
inspect immunity, which, according to plaintiff, "has no application to claims
for injury due to a dangerous condition of public property," and in improperly
narrowing "its consideration of the dangerous condition at issue to the hidden
obstruction," thereby failing to consider "the actual dangerous condition,"
which, according to plaintiff, is "the manner of use" of the Husqvarna mower.

We review a trial court's summary-judgment ruling de novo, applying the
same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017);
see also Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div.
2021). We consider whether the evidence, when viewed in a light most
favorable to the non-moving party, raises genuinely disputed issues of material
fact sufficient to warrant resolution by the trier of fact, or whether the evidence
is so one-sided one party must prevail as a matter of law. Brill v. Guardian Life
Ins. Co. of Am., 142 N.J. 520, 540 (1995). A dispute of material fact is "genuine
only if, considering the burden of persuasion at trial, the evidence submitted by

the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c); see also Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). We review a trial court's legal conclusions de novo. Clark v. Nenna, 465 N.J. Super. 505, 511 (App. Div. 2020).

"The TCA indisputably governs causes of action in tort against governmental agencies within New Jersey." Gomes v. Cnty. of Monmouth, 444 N.J. Super. 479, 487 (App. Div. 2016); see also Nieves v. Adolf, 241 N.J. 567, 571 (2020). One of the fundamental principles embodied in the TCA is governmental immunity is the rule unless the legislature created an exception. Caicedo v. Caicedo, 439 N.J. Super. 615, 623 (App. Div. 2015); see also N.J.S.A. 59:2-1(a) ("[e]xcept as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person").

Plaintiff characterizes his case as a "[TCA] action for a dangerous condition of property aris[ing] from a commercial lawn mower accident." N.J.S.A. 59:4-2 "imposes liability on a public entity for [a dangerous] condition when it was created by the negligence of an employee acting within the scope

of his or her employment, provided the negligence was 'palpably unreasonable.'" Pico v. State, 116 N.J. 55, 63 (1989) (quoting N.J.S.A. 59:4-2).

N.J.S.A. 59:4-2 states a public entity is liable if a plaintiff establishes: (1) public "property was in dangerous condition at the time of the injury"; (2) "the injury was proximately caused by the dangerous condition"; (3) "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) "a negligent or wrongful act or omission of [a public] employee . . . created the dangerous condition"; or "a public entity had actual or constructive notice of the dangerous condition . . . ." Additionally, a public entity is not liable for a dangerous condition of its property if "the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." Ibid.

As the motion judge recognized, counsel "both acknowledged that this is an Ogborne case," referencing Ogborne v. Mercer Cemetery Corp., 197 N.J. 448 (2009). In Ogborne the plaintiff broke her leg when she climbed over a wall to exit a park after a park employee had locked all of the park gates. Id. at 453-54. The plaintiff asserted the ordinary negligence standard of N.J.S.A. 59:2-2[3]

_____

[3] N.J.S.A 59:2-2(a) provides: "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his

applied because the negligent act of the public employee failing to discover her presence in the park before locking the gates caused her injury, not the physical condition of the park. Id. at 456. The city contended the appropriate standard was "whether the [c]ity employee who allegedly locked the [p]ark gates created a dangerous condition of public property that contributed to plaintiff's injury, necessitating the application of N.J.S.A. 59:4-2." Ibid. The city also argued the plaintiff was not injured by the actions of the city employee in locking the park gates but "by the static condition of the [p]ark after the employee's action ceased." Ibid.

The Court framed the issue in the case as "whether the ordinary negligence standard of N.J.S.A. 59:2-2 must give way to the more stringent 'palpably unreasonable' standard of N.J.S.A. 59:4-2 when a public employee's negligent conduct causes a plaintiff to come into contact with a condition of property that causes his or her injury." Id. at 459. The Court found "[i]t was the combination of plaintiff being in the [p]ark and the [c]ity's employee locking the gates that rendered the [p]ark potentially dangerous to plaintiff." Id. at 461. The Court held it was "reasonably debatable that the locking of the gates rendered the

employment in the same manner and to the same extent as a private individual under like circumstances."

[p]ark a dangerous condition" and concluded "the proper legal standard for judging plaintiff's claim against the [c]ity should have been the combined dangerous condition of public property and 'palpably unreasonable' standard pursuant to N.J.S.A. 59:4-2, and not the ordinary negligence standard in N.J.S.A. 59:2-2." Ibid.

Ogborne makes clear the actions of a public employee can create a dangerous condition in otherwise safe public property. In Ogborne, no one claimed that the park itself was dangerous. It was the action of the public employee in locking the park gates with a patron inside that debatably rendered it a dangerous condition. Similarly, here, it was the alleged action of the corrections officers in ordering plaintiff to use the Husqvarna mower over the area at issue that debatably rendered the area a dangerous condition. The motion judge erred in narrowly predicating the existence of a dangerous condition solely on the stump the mower had hit[4] and in failing to consider the role defendants

---

[4] The motion judge incorrectly relied on Levin v. County of Salem, 133 N.J. 35 (1993), a factually-distinct case decided a decade before Ogborne. In Levin the plaintiff had sustained injuries when he dove off a public bridge. Id. at 37. Unlike Levin, this case does not involve a plaintiff engaged in "the unauthorized use of public property for private recreational activities," ibid., but instead, viewing the facts in a light most favorable to plaintiff, a plaintiff who was ordered by a public employee to use a Husqvarna mower in an area where defendants knew it would be unsafe to do so.

allegedly played in creating the dangerous condition by ordering plaintiff to use the Husqvarna mower in an area where they knew it would be unsafe to do so.

The motion judge also erred in limiting the consideration of the fourth prong of N.J.S.A. 59:4-2 to whether defendants knew about the actual stump the mower had hit. In limiting its consideration of the fourth prong to actual knowledge of the particular stump, the motion judge ignored the rest of the language of N.J.S.A. 59:4-2, which provides the fourth prong can be established by proof of "either . . . a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or" the public entity having "actual or constructive notice of the dangerous condition." (Emphasis added). All three individual defendants testified as to their awareness of the existence of stumps in the area where plaintiff allegedly was ordered to mow. Shaw testified it would be wrong to tell plaintiff to "use the scag in that area" because it was not safe to "use a scag when there's stumps or debris in an area." Considering defendants' testimony and plaintiff's testimony that a corrections officer ordered him to use the Husqvarna mower in that area, a reasonable factfinder could conclude defendants had constructive knowledge of the dangerous condition or created a dangerous

11

condition by wrongfully ordering plaintiff to operate the Husqvarna mower in an area where defendants knew it would be unsafe to do so.

Finally, the motion judge erred in concluding "a reasonable jury could not find that the State's actions in directing the plaintiff to use the mower in the location where the mower was used was palpably unreasonable." To establish liability against a public entity under N.J.S.A. 59:4-2, a plaintiff must establish a prima facie case that the action or inaction of the public entity was "palpably unreasonable." Maslo v. City of Jersey City, 346 N.J. Super. 346, 349 (App. Div. 2002). The term "implies behavior that is patently unacceptable under any given circumstance." Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985); see also Ogborne, 197 N.J. at 458-59; Maslo, 346 N.J. Super. at 349-50. Considering Shaw's testimony that it would be wrong to tell plaintiff to "use the scag in that area" because it was not safe to "use a scag when there's stumps or debris in an area," a reasonable factfinder could conclude ordering plaintiff to use the Husqvarna mower in an area where defendants knew it would be unsafe to do so was palpably unreasonable.

We briefly address the motion judge's finding regarding the failure-to-inspect immunity under N.J.S.A. 59:2-6. The judge's finding was conditional; it was premised on "the extent [to which] the plaintiff contends that this was a

failure to inspect the area or negligent inspection of the area." Plaintiff acknowledges he does not claim defendants failed to inspect or negligently inspected something. With that acknowledgment, the trial court's finding regarding the failure-to-inspect immunity is rendered moot.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1560-19