**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0762-23

JESSICA FEENEY and
PATRICK FEENEY,

      Plaintiffs-Appellants,

v.

CITY OF ATLANTIC CITY,

      Defendant-Respondent.

_____

Submitted January 14, 2025 – Decided March 19, 2025

Before Judges Gilson and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0288-21.

D'Arcy Johnson Day, attorneys for appellants (Michael A. Gibson, on the briefs).

George N. Polis, attorney for respondent.

PER CURIAM

Plaintiff Jessica Feeney tripped, fell, and injured herself while walking on the boardwalk in the City of Atlantic City (the City). She and her husband,

Patrick Feeney (collectively, plaintiffs), sued the City alleging that Jessica tripped on uneven boards and the City was negligent in causing the dangerous condition and in not timely repairing the condition.

Plaintiffs appeal from orders granting summary judgment to the City and denying their motion for reconsideration. We affirm because plaintiffs presented no evidence that the City caused the boards to become uneven nor was there evidence that the City had actual or constructive notice of the uneven boards that caused Jessica to fall. Therefore, the City was entitled to summary judgment under the Tort Claims Act (the Act), N.J.S.A. 59:1-1 to 12-3.

I.

We discern the facts from the summary judgment record, viewing them in the light most favorable to plaintiffs, the non-moving party. See Memudu v. Gonzalez, 475 N.J. Super. 15, 18-19 (App. Div. 2023).

On August 30, 2019, plaintiffs were walking on the boardwalk in the City near the Showboat Hotel. Jessica testified that "there was a raised board," her "right foot rolled on an uneven board[,] and [her] leg buckled." Jessica then tripped, fell, and injured herself. Jessica explained that she had not noticed the uneven boards before she fell.

A-0762-23

No photographs of the uneven boards were taken on the day of Jessica's fall. Two days after the fall, Patrick went back to the area and took several photographs. Those photographs showed that several boards running along an adjacent ridge board were lower than the ridge board, and that the displacement of one of the boards was approximately one inch.

In January 2021, plaintiffs sued the City, alleging that the City was negligent in causing the dangerous condition on the boardwalk and in not timely repairing the uneven boards. To support their claims, plaintiffs retained Arthur Chew, a professional engineer, who prepared a liability expert report. Chew reviewed the photographs taken by Patrick and opined that they showed a "hazardous condition" because "deck boards of the fifth ribbon next to the ridge board and the fourth ribbon have dropped by more than an inch at the incident location."

Chew also opined that the City's "police vehicles and public works vehicles that ride on the boardwalk place" high stresses on the boardwalk and those "high[] stresses may cause joists that are experiencing rot to break." Chew concluded: "Within a reasonable degree of engineering certainty, the elevated board was caused by repetitive use of heavy vehicles in the same location which

3

created a dangerous and hazardous condition which posed an unreasonable and foreseeable risk of tripping and falling."

Chew also opined that the City was aware that vehicles traveling on or across the boardwalk could cause boards to become uneven and the City "failed to make timely repairs to the boardwalk in the area of the incident despite having knowledge of the raised boards in the area of the trip [and] fall."

In reaching his opinion about the cause of the uneven boards, Chew relied on testimony from Dennis McReynolds, the City's boardwalk inspector, and George Tittermary, the City's superintendent of beach and boardwalk.

McReynolds testified that he regularly inspected the City's boardwalks for tripping hazards. He explained that he considered uneven boards of more than one quarter of an inch to be a tripping hazard. In that regard, he stated: "I use my own judgment, but usually if it's [a] quarter of an inch difference, then it's something I take care of." McReynolds also explained that boards can become uneven for numerous different reasons, including weather conditions, storms, shifting of the boardwalk foundation, sand being pushed up against the underside of the boardwalk, and vehicles going across the boardwalk.

A-0762-23

Tittermary testified that displacements of more than a quarter of an inch between boards on the boardwalk were "something that needs to be looked at." He also stated that "any vehicle on the boardwalk does damage."

Following the close of discovery, the City moved for summary judgment, arguing that it was shielded from liability under the Act. The City asserted that it had no actual or constructive notice of the uneven boards where Jessica fell. The City also argued that its conduct in inspecting the boardwalk, which is approximately four and a half miles long, was not palpably unreasonable. Finally, the City contended that the uneven boards or raised boards were not a dangerous condition as defined by the Act.

Plaintiffs opposed the motion, contending that there were material issues of disputed fact concerning whether the City had caused the uneven boards. Plaintiffs also argued that the City had constructive knowledge of the dangerous condition because the City knew vehicles regularly drove on and caused damage to the boardwalk.

On June 23, 2023, the trial court heard arguments on the summary judgment motion. About one month later, on July 24, 2024, the court entered an order granting summary judgment in favor of the City and dismissed

A-0762-23

plaintiffs' complaint. The court explained the reasons for its ruling on the record.

The court found that plaintiffs had presented sufficient evidence from which a jury could find that the uneven condition of the boards where Jessica fell constituted a dangerous condition. The trial court also found, however, that plaintiffs presented no evidence that the City caused the dangerous condition. In making that ruling, the trial court considered but rejected the plaintiffs' liability expert's opinion as speculative. The court reasoned that although plaintiffs' liability expert opined that the City caused the boards to become uneven, that opinion was not supported by facts. In that regard, the court pointed out that knowing that vehicles might cause the boardwalk to become uneven in certain places did not establish that the boards where Jessica tripped became uneven because a vehicle drove on those boards.

The trial court also rejected plaintiffs' liability expert's opinion that the City should have discovered and repaired the uneven boards. The trial court pointed out that there were no facts establishing when the boards became uneven and, therefore, there were no facts from which a jury could conclude that the City failed to repair the dangerous condition in a reasonable period of time.

6

Finally, the trial court ruled that even if plaintiffs had demonstrated that the City had actual or constructive notice of the dangerous condition, the City had not acted palpably unreasonably. In that regard, the trial court pointed out that the City had an inspector who regularly inspected the boardwalk, and plaintiffs had presented no evidence that the City should have discovered the uneven boards where Jessica fell.

Plaintiffs moved for reconsideration, but the trial court denied that motion in an order entered on October 20, 2023. In support of that order, the trial court issued a written opinion detailing its reasons for rejecting reconsideration.

II.

Plaintiffs now appeal from the order granting summary judgment and the order denying their motion for reconsideration. They make two arguments. First, they contend that the trial court erred in granting summary judgment because there were material disputed facts concerning whether the City created the dangerous condition that caused Jessica's fall. Second, they contend that their expert's opinions were not net opinions and that those opinions were supported by factual evidence in the record. The record and law do not support either of plaintiffs' arguments. We, therefore, reject them and affirm.

7

Appellate courts review a grant of summary judgment de novo, "applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

A.    The Act.

The Act waives the State's sovereign immunity but does so with certain requirements and limitations. See N.J.S.A. 59:1-2 (explaining that "public entities shall only be liable for their negligence within the limitations of" the

A-0762-23

Act); see also Nieves v. Off. of the Pub. Def., 241 N.J. 567, 574-75 (2020) (explaining that "N.J.S.A. 59:1-2 declares that 'public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein'" (quoting N.J.S.A. 59:1-2)).  "Generally, immunity for public entities is the rule and liability is the exception."  Fluehr v. City of Cape May, 159 N.J. 532, 539 (1999).

The City is a public entity that is liable for its negligence only to the extent permitted by the Act.  N.J.S.A. 59:1-2, 59:1-3, 59:2-1(a); see Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 452-53 (2009) (applying the Act to claims brought against the City of Trenton).  The requirements for holding a public entity liable for the dangerous conditions on public property are set forth in N.J.S.A. 59:4-2.  Under that provision, a plaintiff must demonstrate that:  (1) a dangerous condition existed on the property at the time of the injury; (2) the dangerous condition proximately caused the injury; (3) the dangerous condition created a foreseeable risk of the kind of injury that occurred; (4) the public entity had actual or constructive notice of the condition a sufficient time prior to the injury to correct the dangerous condition; and (5) the action or inaction taken by the public entity to protect against the dangerous condition was palpably unreasonable.  See N.J.S.A. 59:4-2; Polzo v. Cnty. of Essex (Polzo II), 209 N.J.

51, 65-66 (2012) (first quoting N.J.S.A. 59:4-2; then citing <u>Vincitore v. N.J.</u>

<u>Sports & Exposition Auth.</u>, 169 N.J. 119, 124-25 (2001)); <u>Muhammad v. N.J.</u>

<u>Transit</u>, 176 N.J. 185, 194 (2003) (quoting N.J.S.A. 59:4-2).

      B.     Whether the City Had Actual or Constructive Knowledge of the Dangerous Condition.

Plaintiffs have submitted no evidence that the City had actual knowledge of the uneven boards where Jessica fell. Instead, plaintiffs' theory is that the City (1) knew that vehicles drove on the boardwalk, (2) knew that vehicles might cause boards to become uneven, and (3) that, "[d]efendant's 'vehicles going across [the boardwalk]'" likely created the uneven boards. Those general contentions, however, do not present evidence from which a jury could find that the City had actual or constructive notice of the condition where Jessica fell.

Knowing that a boardwalk stretching more than four miles can be damaged at various times from various causes, including vehicles driving on or across the boardwalk, does not constitute actual or constructive knowledge of the specific dangerous condition that caused Jessica to fall.

So, plaintiffs' real theory is that the City should have inspected and found the uneven boards where Jessica fell. The problem with that theory, however, is that plaintiffs have no evidence as to how long the boards were uneven. Plaintiffs' liability expert never identified when the boards became uneven. He

merely speculated that the City should have discovered the uneven boards if they conducted regular inspections. Without knowing when the boards became uneven, however, a jury would have no basis to find that the City had "a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." See N.J.S.A. 59:4-2(b); see also Est. of Massi v. Barr, 479 N.J. Super. 144, 158-59 (App. Div 2024) (explaining what is necessary to establish actual or constructive notice to a public entity).

C.   Not Palpably Unreasonable.

In defining the limits of a public entity's responsibility for a dangerous condition on public property, the Act also provides:

> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
>
> [N.J.S.A. 59:4-2.]

We agree with the trial court that the provision concerning palpably unreasonable acts or omissions provides an alternative ground for affirming the summary judgment order. Viewing the facts most favorably to plaintiffs, their best argument is that the City should have discovered the uneven boards where Jessica fell by conducting more regular inspections. There is no dispute that the

City did inspect for dangerous conditions on the boardwalk. Critically, however, there is no evidence from which a jury could find that the City's failure to conduct more inspections was palpably unreasonable and that liability should be imposed on the City under the Act. See Massi, 479 N.J. Super. at 159 (defining palpably unreasonable as "'behavior that is patently unacceptable under any given circumstance'" (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985))).

D.    The Net Opinions Offered by Plaintiffs' Liability Expert.

N.J.R.E. 703 addresses the foundation for expert testimony. Expert opinions must "be grounded in '"facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts."'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Polzo v. Cnty. of Essex (Polzo I), 196 N.J. 569, 583 (2008)). "The net opinion rule is a 'corollary of [N.J.R.E. 703]'" and it "forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (alteration in original) (quoting Polzo I, 196 N.J. at 583).

Accordingly, an expert is required to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Crispino v. Twp. of

Sparta, 243 N.J. 234, 257 (2020) (quoting Townsend, 221 N.J. at 54). The net opinion rule directs "that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable.'" Townsend, 221 N.J. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). In short, "[t]he net opinion rule is a 'prohibition against speculative testimony.'" Ehrlich v. Sorokin, 451 N.J. Super. 119, 134 (App. Div. 2017) (quoting Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013)).

As we have already summarized, plaintiffs rely on the opinions of their liability expert and contend that there are disputed facts concerning whether the City had constructive knowledge of the uneven boards where Jessica fell. As we have also summarized, the liability expert's primary opinions were net opinions because they were not based on evidence in the record.

Chew opined that the City "had knowledge that their operations in which vehicles driv[ing] on the boardwalk create potential trip hazards on the boardwalk and failed to have a maintenance and replacement program for the boardwalk to eliminate the hazard which ultimately led to the trip and fall of Jessica Feeney." That opinion is not supported by factual evidence. Instead, Chew was seeking to extrapolate from the general knowledge that vehicles

13

driving on the boardwalk can cause damage to boards, that a vehicle or vehicles caused the damage at the spot on the boardwalk where Jessica fell. Chew cites to, and the record contains, no facts establishing that the one-inch displacement in the boards where Jessica fell was caused by a vehicle or vehicles.

Chew also cites no facts supporting his opinion that the "City failed to make timely repairs to the boardwalk in the area of the incident despite having knowledge of [the] raised boards in the area of the trip [and] fall." Like his other opinion, Chew is extrapolating from general testimony—that is, that vehicles driving on the boardwalk can cause damage—to a specific conclusion that the City knew of the uneven boards where Jessica fell.

III.

In summary, after completing discovery, plaintiffs had no evidence that the City had actual or constructive notice of the uneven boards where Jessica fell. The record also establishes that plaintiffs had no evidence that established when the boards became uneven and, therefore, there was no evidence from which a jury could conclude that the City failed to timely fix the uneven boards prior to Jessica's fall. Finally, plaintiffs have no evidence to establish that the actions taken or the omission of actions by the City were palpably unreasonable.

14

For all these reasons, the City was entitled to summary judgment dismissing plaintiffs' claims in accordance with the Act.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

15

A-0762-23